Lynda HALL, Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (AMERICA SER-
VICE GROUP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 28, 2009.

Decided Aug. 13, 2010.

Reargument Denied Oct. 6, 2010.

Richard A. Jaffe, Philadelphia, for petitioner.

Charlene Stewart Barnaba, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Lynda Hall (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that dismissed her utilization review petition and granted her employer's termination petition. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that he lacked jurisdiction over the utilization review petition and that the evidence proved that Claimant had fully recovered from her work injury. Discerning no error, we affirm.

On August 12, 2004, Claimant, a nurse, fell at work, hitting her buttocks, back and shoulder. She continued working until November of 2004 when she left to take a new job. She left that new job in January 2005 because of pain. Claimant then filed a claim petition, a reinstatement petition (Claimant had suffered a serious work injury in 1993) and a review petition against America Service Group (Employer), which was her employer in August 2004. Her petitions were resolved by stipulation and Employer began paying Claimant disability at the rate of $690 per week as of February 15, 2005.

Included in the parties' stipulation was a notice of compensation payable (NCP). In the NCP's "Injury Information" space, the "body part affected" was described as "low back." Claimant's Brief at 69.[2] The "type of injury" was identified as "strains to back, aggravation of lumbar disc disease." *Id.* The "description of injury" was completed as follows:

> lumbar/thoracic/cervical strain & sprain & aggravation of underlying disc disease & prior disc injury at L5–S1, & aggravation of radicular component at L5.

*Id.*

In February 2006, Claimant filed a review petition to assure that treatment pro-

---

1. This case was reassigned to this author on February 9, 2010.

2. Claimant did not file a reproduced record with this Court; a copy of the NCP is appended to her brief at page 69.

vided to her by Guy Fried, M.D. of Magee Rehabilitation Hospital would be covered as reasonable and necessary treatment of her August 2004 work injury. The Utilization Review Organization (URO) assigned the request to Emmanuel E. Jacob, M.D., who issued a report that Dr. Fried did not provide his medical records for review. On the basis of this report, the URO determined Dr. Fried's treatment to be neither reasonable nor necessary.[3]

Claimant then filed the instant utilization review petition, seeking to have the WCJ order a substantive review of Dr. Fried's treatment. Employer filed a termination petition, alleging that Claimant fully recovered from her work injuries as of May 11, 2006. Claimant's utilization review petition and Employer's termination petition were heard in one proceeding before the WCJ.

With respect to Claimant's petition, Employer offered several documents. The documents showed that on February 22, 2006, the URO sent Dr. Fried a letter by certified mail, instructing him to forward a copy of his medical records within 30 days. On April 13, 2006, the URO sent a letter to Dr. Fried acknowledging receipt of the records sent on April 10, 2006, which did not meet the 30–day deadline.

In response, Claimant presented the deposition testimony of Karen McKinney, regional manager of IOD, Inc., a company in the business of processing medical records on behalf of hospitals. McKinney testified that a computer printout showed that Michelle Sampson, the employee assigned to Magee Rehabilitation Hospital, received the URO request on March 1, 2006. On March 2nd, McKinney herself signed the record certification form that accompanies medical records sent out by IOD on behalf of a provider.[4] McKinney assumed that Sampson mailed the records that same day because the computer system listed March 2nd as the "complete date." McKinney admitted that she had no personal knowledge that the records were actually sent on that date. She noted that an entry in the computer system recorded that Dr. Fried's records were "resent" on April 10, 2006, which she could not explain.

In opposition to Employer's termination petition, Claimant testified before the WCJ. Claimant acknowledged that she sustained a work-related back injury in 1993 while working for a different employer. Claimant collected workers' compensation for that injury until she went to work for Employer in October 2001. While working for Employer, Claimant

**3.** Section 127.464 of the Medical Cost Containment regulations states, in relevant part, as follows:

(a) If the provider under review fails to mail records to the URO within 30 days of the date of request of the records, the URO shall render a determination that the treatment under review was not reasonable or necessary, if the conditions set forth in subsection (b) have been met.
(b) Before rendering the determination against the provider, a URO shall do the following:
(1) Determine whether the records were mailed in a timely manner.
(2) Indicate on the determination that the records were requested but not provided.

(3) Adequately document the attempt to obtain records from the provider under review, including a copy of the certified mail return receipt from the request for records.
34 Pa.Code § 127.464.

**4.** This is required by Section 127.459(c) of the Medical Cost Containment regulations, which states:

The provider under review, *or his agent,* shall sign a verification that, to the best of his knowledge, the medical records provided constitute the true and complete medical chart as it relates to the employe's work injury.
34 Pa.Code § 127.459(c) (emphasis added).

treated regularly with Steven J. Valentino, D.O., for her 1993 back injury.

Claimant explained that the day after her fall in August 2004, she sought treatment from Episcopal Hospital's emergency room. She then treated with Employer's panel physician for several months while, at the same time, she continued to see Dr. Valentino for treatment. The August 2004 incident did not interfere with Claimant's ability to work for Employer, and she continued to do so until November 2004 when she left to take a position with another company. Claimant left her new job on January 5, 2005, because of pain. Employer has paid her total disability benefits in accordance with the stipulation since February 15, 2005.

Claimant testified that since the August 2004 fall, her back pain has increased. She experiences pain in her legs as well as neck pain, which causes headaches and numbness in the ring and small fingers of her right hand. In response to her attorney's question about her thoracic spine, Claimant replied that this area is "very tender." Notes of Testimony, November 13, 2006, at 25. Claimant testified that she cannot return to her pre-injury job or any other work because of her back, leg and neck pain.

Claimant presented the deposition testimony of Dr. Valentino, a board certified orthopedic surgeon who began treating Claimant in March 1996 for her 1993 work injury, which caused a herniated disc at L5–S1. This work injury was preceded by lumbar degenerative disc disease. Prior to seeing Dr. Valentino, Claimant underwent surgery for her herniated disc, but it was not successful and the herniation recurred. In 2001, Dr. Valentino authorized

Claimant to take the light-duty job with Employer. In March 2004, Claimant reported a worsening of back pain, prompting Dr. Valentino to remove her from work for two weeks. At the next visit in July 2004, Claimant complained of back pain, which was radiating into both legs. Dr. Valentino diagnosed Claimant with post laminectomy syndrome, lumbar disc herniation at L5–S1, facet syndrome and sacroiliac joint dysfunction.

After her July 2004 visit, Dr. Valentino next saw Claimant on October 6, 2004, at which time she complained of increased back pain, pain in both sacroiliac joints as well as pain and numbness in both legs. Dr. Valentino observed restricted range of motion and back spasms. Claimant did not mention her fall at work two months before this visit. Dr. Valentino saw Claimant in December 2004 and again in January 2005; at neither visit did she mention the August 2004 fall. On February 1, 2005, Claimant reported her August 2004 fall at work to Dr. Valentino. Also at this visit, she reported, for the first time, new symptoms consisting of pain in the neck and upper back as well as upper extremity numbness. At that point, Dr. Valentino diagnosed Claimant with a cervicothoracic lumbar strain or sprain; aggravation of lumbar degenerative disc disease; and aggravation of the pre-existing L5–S1 disc herniation with sciatica. He attributed these conditions to the 2004 fall at work.[5] Dr. Valentino last examined Claimant on September 6, 2006, when he diagnosed her with cervicolumbar disc herniations; cervical radiculopathy; and aggravation of pre-existing cervicolumbar degenerative disc disease.[6] This diagnosis, unlike the one of

---

5. Dr. Valentino interpreted a lumbar EMG as showing both old and new nerve damage at S1. He also interpreted a cervical MRI as showing degenerative changes and herniated

discs from C3 to T1 with both old and new nerve compression.

6. In her brief, Claimant emphasizes Dr. Valentino's diagnoses, but they are not relevant.

February 1, 2005, did not include a sprain or strain at any point of her spine. Dr. Valentino does not believe Claimant can work at any job.

In support of its termination petition, Employer presented the deposition testimony of David N. Bosacco, M.D., a board certified orthopedic surgeon who performed an independent medical examination (IME) of Claimant on May 11, 2006. Because Claimant complained to Dr. Bosacco of pain in her neck, low back and right hand, he focused his physical examination on those areas. With regard to the cervical and lumbar areas, Dr. Bosacco reported that Claimant's neurological examination was normal, and her range of motion was normal. He found no spasms, tenderness or radiculopathy. Dr. Bosacco reviewed radiographic diagnostic tests, and they revealed that Claimant had degenerative disc disease in the lumbar and cervical spine and a recurrent herniated lumbar disc at L5–S1, all of which pre-existed the 2004 work incident.

Based on his physical examination and review of her medical records, Dr. Bosacco opined that Claimant was fully recovered from her work-related injury, which he described as a cervical and lumbar sprain and strain with an exacerbation of symptoms of her pre-existing lumbar disc disease and lumbar disc herniation at L5–S1. Dr. Bosacco explained that the aggravation, or "exacerbation," of lumbar disc disease was resolved by the date of the IME. Dr. Bosacco added that Claimant had also recovered from any lumbar radiculopathy. In his view, Claimant's fall at work in

August 2004 did not require any work restrictions.

■ The WCJ accepted the testimony of Dr. Bosacco as credible and rejected the testimony of Dr. Valentino. The WCJ was troubled by Dr. Valentino's attempts to sidestep the fact that Claimant's pre-injury condition was prone to worsening, which, in fact, had happened in March 2004 and July 2004, well before her August 2004 fall. The WCJ specifically rejected Dr. Valentino's opinion that Claimant sustained a new pathology as a result of the August 2004 injury. The WCJ found that Claimant fully recovered from the work injury by the time of the IME on May 11, 2006, and granted Employer's termination petition.[7]

The WCJ also conducted a factual inquiry into the timeliness of Dr. Fried's response to the URO request for medical records. *Gazzola v. Workers' Compensation Appeal Board (Ikon Office Solutions)*, 911 A.2d 662 (Pa.Cmwlth.2006). The WCJ considered McKinney's testimony but found that she was "the wrong person to testify" because she did not know whether Dr. Fried's records had been sent to the URO on March 2, 2006. WCJ Decision, May 12, 2008, at 4; Finding of Fact 20. In the absence of competent evidence to show that records had been sent to the URO in a timely manner, the WCJ dismissed Claimant's utilization review petition.

■ Claimant appealed the WCJ's decision on both petitions, and the Board affirmed. Claimant then petitioned for this Court's review.[8]

---

The only accepted cervical injury was a cervical strain and sprain. The WCJ did not amend the NCP to include any other injuries.

7. In assessing the evidence, the WCJ is the ultimate fact finder and has complete authority over questions of credibility and evidentiary weight. *Davis v. Workers' Compensation Ap-*

*peal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa.Cmwlth.2000).

8. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were

On appeal, Claimant raises four issues. First, she contends that the WCJ erred in terminating her benefits on the basis of Dr. Bosacco's testimony because she believes it was incompetent. Second, she contends that the WCJ did not issue a reasoned decision. Third, she contends that the evidence showed that Dr. Fried's records were timely sent to the URO and, thus, the WCJ erred in dismissing her petition. Finally, she contends that the WCJ erred in failing to award her litigation costs. We will address these issues *seriatim.*

■ The first, and principal issue, is whether Dr. Bosacco's opinion, which was credited by the WCJ, was competent. Claimant argues that Dr. Bosacco did not acknowledge all of her accepted work injuries in rendering his opinion of full recovery.

■ Benefits may be terminated where the employer proves that the claimant is fully recovered from the work injury and has no remaining disability that relates to the work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital),* 705 A.2d 503, 506–507 (Pa.Cmwlth.1998). An employer proves full recovery with unequivocal, competent medical evidence. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.),* 141 Pa.Cmwlth.253, 595 A.2d 697, 699

(1991). In a termination petition, the employer may not relitigate the nature of the accepted work injury. *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker),* 785 A.2d 1087, 1092 (Pa.Cmwlth.2001). Accordingly, a medical expert's opinion will not support a termination if that medical expert does not acknowledge the accepted work injuries and does not opine full recovery from those injuries. *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board),* 865 A.2d 991, 996 (Pa. Cmwlth.2005).[9]

Claimant has an extensive medical history relating to her back, involving degenerative disc disease, which is not work-related; a work injury in 1993; flare-ups of these conditions; and the August 2004 work injury. Dr. Bosacco demonstrated a full understanding of this history. Contrary to Claimant's argument, a review of his testimony reveals that his opinion of full recovery is competent.

Claimant challenges Dr. Bosacco's diagnosis of the work injury, namely, "cervical and lumbar sprain and strain with exacerbation of symptoms of lumbar disc disease and pre-existing recurrent lumbar disc herniation at L5–S1." Bosacco Dep., August 22, 2006, at 17.[10] Claimant contends this diagnosis reveals that Dr. Bosacco did not believe her disc herniation at L5–S1 to

---

violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

9. Claimant also argues that Employer failed to meet its burden for obtaining a termination of benefits because it did not present evidence that there was a change in Claimant's physical condition since the last disability determination as required by *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.),* 591 Pa. 490, 919 A.2d 922 (2007).

However, Claimant is actually arguing that Employer's medical expert recharacterized and ignored the description of the work injury.

10. As noted, the stipulated NCP described Claimant's injury as follows:

lumbar/thoracic/cervical strain & sprain & aggravation of underlying disc disease & prior disc injury at L5–S1, & aggravation of radicular component at L5.

Claimant's Brief at 69.

be work-related.[11] Claimant also complains that Dr. Bosacco's diagnosis omitted any mention of her lumbar radiculopathy or a thoracic strain and sprain, which were referenced in the NCP, and uses the word "exacerbation," instead of the word used in the NCP, *i.e.,* "aggravation."

First, there is simply no basis to Claimant's contention that Dr. Bosacco did not find Claimant's L5–S1 disc herniation to be work-related. Dr. Bosacco and Dr. Valentino both testified that Claimant sustained a work-related herniated disc in 1993, which recurred, causing radiculopathy and sciatica. This recurrence preceded, by many years, Claimant's August 2004 work incident. Dr. Bosacco correctly described Claimant's recurrent disc herniation as "pre-existing" because, in fact, it "pre-existed" her August 2004 fall at work.

Second, it is of no moment that Dr. Bosacco's diagnosis of her work injury did not specify that one of Claimant's "symptoms of lumbar disc disease" was "radiculopathy." In any case, Dr. Bosacco opined that Claimant was fully recovered from her work-related radiculopathy, as is shown in the following exchange:

> **Employer's counsel:** And would [your opinion of full recovery] include any type of aggravation or exacerbation of the disc or a radiculopathy as far as the lumbar spine is concerned.
>
>          \*      \*      \*
>
> **Dr. Bosacco:** Yes. I was not able to make the definition of aggravation. I did note exacerbation. *If an aggravation had been accepted, it would have been resolved* by 5/11/06 in my opinion.

Bosacco Dep. at 19 (emphasis added). Contrary to Claimant's assertion, Dr. Bosacco not only acknowledged Claimant's work-related radiculopathy, he opined that she recovered from it.

■ Third, it matters not that Dr. Bosacco used the word "exacerbation" instead of "aggravation" in his description of her work injury.[12] As the above-quoted exchange reveals, Dr. Bosacco gave an unqualified opinion of full recovery from an aggravation. A medical expert need not necessarily believe that a particular work injury actually occurred. *To v. Workers' Compensation Appeal Board (Insaco, Inc.),* 819 A.2d 1222, 1225 (Pa.Cmwlth. 2003). The expert's opinion is competent if he assumes the presence of an injury and finds it to be resolved by the time of the IME. *Id.; Jackson v. Workers' Compensation Appeal Board (Resources for Human Development),* 877 A.2d 498, 503 (Pa.Cmwlth.2005). Dr. Bosacco did just that.

Finally, we turn to Claimant's assertion that Dr. Bosacco did not address her thoracic strain and sprain. The stipulated NCP identified the "body part affected" by Claimant's August 2004 fall to be her "low back." Claimant fails to mention that she stipulated that her "low back," not her mid-back, was affected by her fall. Further, the medical evidence for a discrete "thoracic" injury is utterly lacking.

The NCP describes the work injury as "lumbar/thoracic/cervical strain & sprain," which simply restates Dr. Valentino's diagnosis of "[c]ervicothoracic lumbar strain/

---

**11.** She does not challenge the competency of his opinion that she had recovered from the lumbar and cervical strain and sprain and the aggravation of lumbar degenerative disc disease.

**12.** Dr. Bosacco did not explain what he believed to be different between an exacerbation and an aggravation. In any case, he acknowledged Claimant's aggravation and concluded that it had resolved, after examining Claimant's lumbar spine and finding no objective abnormalities.

sprain." Valentino Dep., October 18, 2006, at 16.[13] A diagonal is a symbol used

> to denote "or" (as in *and/or*), "and or" (as in *straggler/deserter from*), "per" (as in *feet/second*), "in" or "of" (as in *U.S. Embassy/Paris*) . . . "for" (as in 2/39) to indicate division (as in birth/death ratio) or . . . to separate terms of quantity (as in 5 *tons* /7 *cwts* /57 *lbs* ) . . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002), at 622 (emphasis in original). Simply, as a matter of grammar, "lumbar/thoracic/cervical" does not mean a stand-alone "thoracic strain." It signifies, rather, a lack of clarity about the boundaries of Claimant's back sprains.

Dr. Valentino never diagnosed Claimant with a separate thoracic injury, and no medical records support the existence of such an injury. The record from Episcopal Hospital, where Claimant sought treatment the day after her fall, lists her diagnosis as cervical and lumbar sprains. It does not mention the thoracic region of the spine. Bosacco Dep., Exhibit C–Bosacco 4. Claimant never complained of a separate thoracic injury to Dr. Valentino or to any other health care provider. She complained of neck and low back problems, and Dr. Valentino focused his treatment on those areas. Claimant underwent radiographic diagnostic tests to her neck and low back, but no tests were ever ordered for her thoracic spine. In the absence of any medical evidence of a separate thoracic injury, it is a stretch to construe the above-quoted language in the NCP as establishing a stand-alone thoracic sprain or strain.

Dr. Bosacco did not examine Claimant's thoracic spine because *Claimant made no complaints during the IME involving that area.* Indeed, her lack of complaint in this regard was consistent with her medical history. At the hearing, Claimant asserted, in passing, that she experienced "tenderness" in the thoracic area, but she did not relate this "tenderness" to her work injury or relate this tenderness to an inability to work. It is difficult to assign any significance to her remark, especially since she discoursed at length on her pain in the cervical and lumbar areas of her spine.

■ Nevertheless, because the word "thoracic" appears on the NCP, we will give Claimant the benefit of the doubt that her August 2004 work injury included a discrete thoracic sprain or strain. Even so, Employer is entitled to a termination of benefits.

■ Dr. Valentino last saw Claimant on September 6, 2006, at which time he reported a diagnosis of

> cervicolumbar disc herniation[s] with radiculopathy, facet syndrome, [sacroiliac] dysfunction with aggravation of cervicolumbar degenerative disc disease.

Valentino Dep. at 29–30. Absent from this diagnosis is any mention of residual "thoracic" sprain or strain. Courts must examine the entire record to determine whether the burden of proof has been met, and a party can meet its burden with evidence "introduced by his adversary." *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 388 n. 3 (Pa.Cmwlth.1999). Here, Dr. Valentino's most recent diagnosis established that Claimant was fully recovered from any "thoracic sprain" by September 6, 2006, the date of Dr. Valentino's most recent

---

**13.** Despite seeing Claimant several times in the interim, Dr. Valentino did not render this diagnosis until February 2005, when Claimant finally told him of the work incident nearly six months after the fact. The WCJ was troubled by this, as is this Court, considering that Claimant only mentioned her work incident after leaving her job with Employer to take an even more strenuous job.

examination. Therefore, assuming that the NCP specified a discrete "thoracic sprain," Claimant's benefits must be terminated no later than September 6, 2006.[14]

■■■■ Next, we consider Claimant's charge that the WCJ did not issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act,[15] which provides that a reasoned decision is one "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions." 77 P.S. § 834. A decision is reasoned "if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003). This means that where the WCJ considers medical testimony given by deposition, the WCJ must explain his credibility determination. *Id.* at 78, 828 A.2d at 1053. This is appropriate because the WCJ does not have the benefit of observing the demeanor of the medical experts.

■■■■ The WCJ did not credit Dr. Valentino's testimony for the reason that it was "equivocal in places;" tried to minimize the fact that Claimant's symptoms began to worsen even before the August 2004 fall; and was directly refuted by Dr. Bosacco. WCJ Decision, May 12, 2008, at 3; Finding of Fact 16. Claimant argues that Dr. Valentino's opinions were "wholly consistent" with the facts established in the stipulation. In effect, Claimant disagrees with the WCJ's credibility determination, but disagreement with a credibility determination is not a basis for setting it aside.[16] *Kasper v. Workers' Compensation Appeal Board (Perloff Brothers, Inc.)*, 769 A.2d 1243, 1246 (Pa.Cmwlth.2001). Contrary to Claimant's assertion, then, the WCJ's decision is a reasoned one.

■■■■ Finally, we consider Claimant's assertion that the WCJ erred in dismissing her utilization review petition. She acknowledges that as the URO found the treatment not reasonable and necessary because it did not receive Dr. Fried's records in a timely manner, the WCJ did not

---

**14.** Contrary to the dissent's assertion, the burden of proof on the termination has not been shifted from Employer to Claimant by using Claimant's evidence. Use of the other party's evidence may be used in any litigation, and specifically in workers' compensation. In no way does this shift the burden of proof. *SKF USA, Inc.*, 728 A.2d at 388 n. 3. Here, Claimant's evidence of her recovery from her "thoracic strain and sprain" supports a termination of benefits.

**15.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. Section 422(a) provides in relevant part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the

evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review. 77 P.S. § 834.

**16.** In her brief, Claimant argues at length that Dr. Valentino's testimony was consistent with the medical evidence. It matters not whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa.Cmwlth.1998).

have jurisdiction to decide the merits. She also agrees that the WCJ properly focused on the URO's attempt to obtain the medical records and what occurred in response thereto. However, Claimant argues that the WCJ erred in concluding that her evidence was insufficient to establish that the records were provided to the URO in a timely manner.

Section 127.464(a) of the Medical Cost Containment regulations requires the provider to mail the appropriate medical records to the URO within 30 days of their request.[17] It is the date the records are mailed, not the date they are received by the URO, that is critical. *Sueta v. Workers' Compensation Appeal Board (City of Scranton)*, 943 A.2d 1017, 1021 (Pa. Cmwlth.2008).

Claimant acknowledges that the URO requested the records on February 22, 2006, and that either Dr. Fried or his agent was required to mail his records no later than March 24, 2006. Claimant takes issue with the WCJ's conclusion that Karen McKinney was "the wrong person to testify," insisting that McKinney's testimony establishes that the records were sent to the URO on March 2, 2006, the "complete date" listed in the computer.[18]

We reject Claimant's argument. Although McKinney signed a records certification form and testified that the records request was marked "complete" on March

2, 2006, she had no personal knowledge of whether or when the records were mailed to the URO. Sampson, the person who handled the records request, did not testify. Claimant did not produce a certified mail receipt to show that the records were mailed prior to April 10, 2006. Because Claimant did not prove that Dr. Fried's records were mailed to the URO by March 24, 2006, the WCJ did not err in dismissing her utilization review petition.[19]

We will give Claimant the benefit of the doubt that the NCP identified a discrete thoracic sprain. However, Claimant's own evidence shows that the sprain had resolved by September 6, 2006. Accordingly, the Board's order will be modified to terminate Claimant's benefits as of the date of her own doctor's diagnosis.

## ORDER

AND NOW, this 13th day of August, 2010, the order of the Workers' Compensation Appeal Board dated February 12, 2009, in the above captioned matter is hereby MODIFIED to provide a termination of benefits as of September 6, 2006, and AFFIRMED in all other respects.

DISSENTING OPINION BY Senior Judge FLAHERTY.

I respectfully dissent from the majority opinion in this matter. Because I agree that the Workers' Compensation Appeal

---

17. *See* footnote 3 *supra* for the text of the regulation.

18. In the alternative, Claimant argues that if Dr. Fried's records were processed on March 2, 2006, but not actually transmitted to the URO, the fault lies with IOD, which was the provider's agent. Employer responds that Claimant has waived this issue by failing to raise it before the Board. An issue not raised before the Board cannot be raised for the first time before this Court. *Myers v. Workers' Compensation Appeal Board (Family Heritage*

*Restaurant)*, 728 A.2d 1021, 1023 (Pa.Cmwlth. 1999). We agree with Employer that this issue is waived. In any case, the acts or omissions of IOD must be assigned to its principals, Magee Rehabilitation Hospital and Dr. Fried.

19. We need not consider Claimant's final issue, *i.e.*, that she should have been awarded litigation costs. Section 440(a) of the Act, 77 P.S. § 996(a), authorizes litigation costs only to a claimant who is successful in the litigation, and Claimant was not.

Board (Board) erred to the extent it found substantial, competent evidence to support a termination of benefits, I would reverse on this issue.

This case is made complicated by the haphazard execution of the NCP. As indicated by the Majority, the NCP indicates that the "Body Part(s) Affected" by Claimant's August 12, 2004 injury was the "low back." Claimant's brief at p. 69. That same document, however, lists a "Description of Injury" as "lumbar/thoracic/cervical strain & sprain & aggravation of underlying disc disease & prior disc injury at L5–S1, & aggravation of radicular component at L5." *Id.*[1]

A review of the NCP reveals that Employer accepted a thoracic strain and sprain following Claimant's work-related fall in 2004. The Majority suggests that the phrase "lumbar/thoracic/cervical strain & sprain" does not connote a stand-alone "thoracic strain." Majority Op., p. 742. Instead, it proffers that the use of the "diagonal" implies a lack of clarity concerning the boundaries of Claimant's back sprains and strains. *Id.* It further indicates Claimant stipulated in an earlier proceeding that her work-related injuries were limited to her low back.

Employer does not make any argument concerning any prior stipulation limiting Claimant's injuries to the low back. Any such stipulation, like the NCP, is absent from the certified record. Employer concedes, in brief, that the NCP does contain an injury description that includes a "lumbar/thoracic/cervical strain and sprain."

Employer's brief, p. 2. Simply put, Employer, of is own volition, placed the word "thoracic" on the NCP. An NCP is a unilateral document issued by an employer. To find Employer can indicate a thoracic injury on the NCP and later disavow its occurrence is untenable. See *Beissel v. Workmen's Compensation Appeal Board (John Wanamaker, Inc.)*, 502 Pa. 178, 465 A.2d 969 (1983) (holding that if, after having full opportunity to investigate a claim, an employer recognizes a specific injury in an NCP, it may not challenge causation at a later date because it already admitted liability).[2]

Regardless, the Majority elected to give Claimant the benefit of the doubt and assumed an independent thoracic sprain and strain was part of the work injury. It found that assuming the NCP specified a discrete thoracic injury, Claimant's benefits should be terminated as of September 6, 2006, the date Dr. Valentino, Claimant's medical expert, last examined her. It found that on that day, Claimant's medical expert rendered a work-related diagnosis of "cervicolumbar disc herniation[s] with radiculopathy, facet syndrome, [sacroiliac] dysfunction with aggravation of cervicolumbar degenerative disc disease." Majority Op., p. 742. According to the Majority, Dr. Valentino's most recent diagnosis established Claimant was fully recovered from any thoracic injury as of that date. In so finding, it relies on *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 388 n. 3 (Pa. Cmwlth.1999), for the principle that a par-

---

1. I agree with the Majority and assume that the contents of this NCP can be considered despite the fact that this document was never submitted into the certified record. It is imperative, however, that we consider the document as a whole.

2. It is acknowledged that an NCP, or a portion thereof, can be set aside upon a showing that it is materially incorrect. *Mahon v. Workers' Compensation Appeal Board (Expert Window Cleaning)*, 835 A.2d 420 (Pa.Cmwlth. 2003). There is no indication in the record, however, that Employer ever attempted to remove the thoracic sprain and strain from the NCP.

ty can satisfy its burden of proof based on evidence presented by its adversary. The Majority was required to examine Claimant's evidence to determine whether Employer was entitled to a finding of full recovery from a stand-alone thoracic injury. Employer's expert, as conceded by the Majority, did not examine Claimant's thoracic spine. Employer's expert explicitly stated his physical examination was limited to the "lumbar" and "cervical" regions of the spine. Depo. dated 8/22/06, p. 14. An employer's medical expert cannot ignore the fact that the claimant sustained other previously accepted work-related injuries when offering an opinion of full recovery. *Gillyard v. Workers' Compensation Appeal Board (Pa. Liquor Control Bd.)*, 865 A.2d 991 (Pa.Cmwlth.2005).

The Majority's reliance on *Smalls* appears misplaced. In a termination proceeding, the burden of proof is on the employer to establish that the claimant has fully recovered from his work-related injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 705 A.2d 1290 (1997). If a claimant sustained multiple work-related injuries, the employer must present proof of full recovery for each respective injury. *Central Park Lodge v. Workers' Compensation Appeal Board (Robinson)*, 718 A.2d 368 (Pa. Cmwlth.1998). The employer's burden is a considerable one and it never shifts to the claimant because disability is presumed to continue until proven otherwise. *Marks v. Workers' Compensation Appeal Board (Dana Corp.)*, 898 A.2d 689 (Pa.Cmwlth. 2006). Dr. Valentino, per the Majority, never diagnosed Claimant with a separate thoracic injury. It is questionable how his most recent diagnosis, that would neces-

sarily not include a thoracic injury if he never diagnosed one, could be sufficient to support a finding of full recovery from this type of injury. *Udvari; Robinson.* In finding that Dr. Valentino's opinion established full recovery inasmuch as Dr. Valentino did not opine Claimant continued to experience problems from a thoracic sprain and strain, the Majority shifted the burden of proof in this termination proceeding to Claimant in contravention of *Marks.*

It is acknowledged that when a claimant's own evidence concedes full recovery from a particular injury, termination is proper even if the employer's expert failed to address that injury. *Stancell v. Workers' Compensation Appeal Board (LKI Group, LLC)*, 992 A.2d 221 (Pa.Cmwlth. 2010); *Jackson v. Workers' Compensation Appeal Board (Res. for Human Dev.)*, 877 A.2d 498 (Pa.Cmwlth.2005). Claimant, however, did not concede to full recovery on the thoracic injury issue. At hearing, the following dialogue took place:

Q. One of the other diagnoses that was contained in Judge Gilbert's decision was your thoracic spine, in other words your mid-back. Are you still having any other problems in that area?[3]

A. Uh-huh (yes).

. . .

Q. What kind of problems are you still having in the mid-back area?

A. It's very tender to touch.

Q. Did you ever have any problems with your thoracic spine before this incident?

---

3. This reference to a decision by Workers' Compensation Judge (WCJ) Gilbert apparently refers to a decision whereupon WCJ Gilbert disposed of certain petitions by adopting the previously mentioned stipulation. The NCP and stipulation were apparently attached to WCJ Gilbert's decision. None of these documents are part of the certified record.

A. No.

N.T. dated 11/13/06, p. 25.

Claimant did not concede full recovery from her thoracic injury. Employer is not entitled to a finding that Claimant is fully recovered from a discrete thoracic injury based on this type of circumstance. *Stancell; Jackson.* I would reverse the Board on this issue. There is no competent, credible evidence that Claimant is fully recovered from *all* of her work-related injuries as required by *Robinson.* Moreover, assuming Claimant were successful on appeal regarding the termination issue, she would have prevailed, in part, in the litigation. I would further remand for an award of litigation costs pursuant to Section 440(a) of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 996(a).