# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Hughes,                 :

                   Petitioner       :

                                  :

            v.                   :    No. 1132 C.D. 2017

                                  :    Submitted: December 29, 2017

Workers' Compensation Appeal   :

Board (Pep Boys),               :

                   Respondent   :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER              FILED: February 26, 2018

Thomas Hughes (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) granting his Claim Petition for Workers' Compensation (Claim Petition) but terminating his workers' compensation (WC) benefits as of November 10, 2015, based on his full recovery. On appeal, Claimant argues that the WCJ's finding that he was fully recovered, the basis of the termination of his WC benefits, is not supported by competent evidence. Because a review of the record as a whole reveals that the WCJ's finding of full recovery is supported by substantial, competent evidence, we affirm.

On August 17, 2015, Claimant filed the Claim Petition, asserting he sustained a right shoulder injury on July 20, 2015, while performing his duties as a mechanic for Pep Boys #1425 (Employer) and had not returned to work. In particular, Claimant averred that he "was hammering rotors on a vehicle and [he] felt a pop in [his] right shoulder." (Reproduced Record (R.R.) at 3a.) In addition to issuing a Notice of Compensation Denial based on its contention that Claimant did not sustain a work-related injury, Employer filed an Answer denying the Claim Petition's material allegations. The Claim Petition was assigned to a WCJ for resolution.

Claimant testified before the WCJ and via a deposition as follows. On July 20, 2015, Claimant was working full-time as a mechanic for Employer when, while trying to remove rotors and brakes that were rusted onto the vehicle with a five-pound mallet, he felt pain going from his right hand and thumb, into his shoulder, and into his neck. Claimant experienced "tingling in his hand, very bad pain[,] and [he] started dropping tools." (WCJ Decision, Finding of Fact (FOF) ¶ 5(c).) However, because Claimant was paid only for jobs he completed, he attempted to finish the job but could not. After informing his supervisor about what happened, Claimant was asked to, and he did try to, finish the day but he could not. Claimant contacted a Registered Nurse (RN) at his supervisor's direction, and the RN sent him to WorkNet. Claimant received treatment from WorkNet until Employer denied his claim, at which time he was released to work with restrictions. Claimant was referred to an orthopedic surgeon by counsel, whom he saw once, and Claimant subsequently began treatment with William Pavlou, M.D. Claimant cannot return to work, and he experiences symptoms that include: problems sitting and driving; an inability to lift anything above his shoulders; tingling in his right hand; and pain in his neck, shoulder, and hand.

Claimant also offered the deposition testimony of Dr. Pavlou, who is board-certified in family medicine and who testified as follows. Dr. Pavlou first saw Claimant in October 2015, and, based on the history of the injury given to him by Claimant, and a review of MRI and EMG reports, he opined that Claimant sustained work-related injuries in the nature of a "right shoulder rotator cuff tear and tendinopathy[,] and cervical [spine] sprain and disc disease with radiculopathy" as a result of the July 20, 2015 incident. (*Id.* ¶ 7(b).) Claimant did not have any complaints prior to the incident, and the mechanism of the injury was consistent with a rotator cuff tear and a disc herniation. Claimant's treatment consists of prescription medication and physical therapy once or twice a week. Claimant has not experienced any significant improvements. Dr. Pavlou has not released Claimant to his pre-injury work because Claimant's right shoulder remains symptomatic and, as a result of debilitating pain, renders him unable to perform manual labor with his upper extremities.

Employer presented the deposition testimony of Donald Leatherwood, M.D., a board-certified orthopedic surgeon who completed a fellowship in upper extremities. Dr. Leatherwood performed an Independent Medical Examination (IME) of Claimant on November 10, 2015, and testified as follows.[1] Dr. Leatherwood conducted a physical examination of Claimant, the results of which were objectively normal. Claimant's right shoulder examination was "really quite good," although he had some minor subjective complaints regarding tenderness and range of motion, none of which were supported by objective findings. (*Id.* ¶ 8(c).) Dr. Leatherwood reviewed Claimant's records, including the actual MRI scans of Claimant's right shoulder and cervical spine. The shoulder MRI showed

---

[1] The finding of fact summarizing Dr. Leatherwood's testimony mistakenly identifies him as Claimant's witness.

3

degenerative changes to the rotator cuff, "which could be called a partial tear and chronic[,]" but no traumatic findings. (*Id.* ¶ 8(d).) He agreed with the radiologist's findings on the cervical spine MRI that there were degenerative changes but no traumatic changes. Dr. Leatherwood's review included the notes of Claimant's treatment by WorkNet from July 20, 2015, through August 4, 2015, which diagnosed Claimant with a sprain/strain of the right shoulder and cervical spine. Based on his review of Claimant's history, his physical examination of Claimant, and his review of Claimant's medical records, Dr. Leatherwood opined there was no objective evidence demonstrating that an injury occurred on July 20, 2015, and that the mechanism of the alleged injury to Claimant's cervical spine, Claimant performing his normal job, did "not make sense to him" particularly after his review of a surveillance video from the date of the injury. (*Id.* ¶ 8(i), (k).) However, "there [wa]s the potential for a sprain/strain of the shoulder or the muscles from the shoulder to the base of neck." (*Id.* ¶ 8(i).) "[A]s of the date of his examination, . . . there was no evidence of any ongoing injury of any kind and Claimant could return to his normal duty without restriction." (*Id.* ¶ 8(j).)

The WCJ credited Claimant's testimony about having pain in his neck and shoulder on July 20, 2015, while he performed his physically demanding job duties, that he reported his injury to his supervisor and the RN, and was sent to WorkNet where his injuries were diagnosed. Based on her observations of Claimant's demeanor, the WCJ rejected his testimony that he had ongoing complaints and disability related to the July 20, 2015 work incident. As for the medical testimony, the WCJ credited Dr. Pavlou's opinion that a work injury occurred over Dr. Leatherwood's contrary opinion, noting that WorkNet treated Claimant from July 20, 2015, through August 4, 2015, based on its diagnosis of right shoulder and

4

cervical spine sprain/strain, and Dr. Leatherwood recognized that a potential injury from Claimant's work activities was "a sprain/strain of the shoulder or the muscles from the shoulder to the base of the neck." (*Id.* ¶ 11.)[2] However, the WCJ found more credible and persuasive Dr. Leatherwood's testimony regarding the nature of Claimant's injury and extent of Claimant's disability. The WCJ explained that Dr. Leatherwood had more expertise as a board-certified orthopedic surgeon with a fellowship in upper extremities, he is qualified to read and did read the actual imaging studies of Claimant's shoulder and cervical spine, and his "opinions [were] based on and supported by the examination performed and records reviewed." (*Id.* ¶ 12(b).)

Based on these credibility determinations, the WCJ found that "Claimant sustained a sprain/strain to his right shoulder and to his neck in the course of employment on 7/20/15 and resulting in disability up to but not including 11/10/15." (*Id.* ¶ 11(2).) "Claimant was fully recovered from his work injuries as of 11/10/15." (*Id.* ¶ 12(2).) Accordingly, the WCJ granted the Claim Petition, directed Employer to pay Claimant's reasonable and necessary medical expenses related to his work injury and WC benefits from July 20, 2015, "up to but not including" November 9, 2015, and terminated Claimant's WC benefits as of November 10, 2015. (WCJ Order.) Claimant appealed to the Board, arguing that the WCJ erred in terminating his WC benefits based on Dr. Leatherwood's testimony because that testimony was not competent in that it failed to recognize the judicially-determined injury. Upon its review of the record, the Board held that Dr. Leatherwood's testimony was

---

[2] The WCJ's Decision contains two findings of fact 11 and 12. We will refer to the second of each as 11(2) and 12(2), respectively.

5

competent and affirmed the WCJ's Decision.  Claimant now petitions this Court for review.[3]

On appeal, Claimant reiterates his argument that the WCJ erred in terminating his WC benefits because Dr. Leatherwood's testimony was not competent due to his refusal to recognize that Claimant sustained **any** injury on July 20, 2015.  *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010); *U.S. Steel Mining Co., LLC v. Workers' Comp. Appeal Bd. (Sullivan)*, 859 A.2d 877, 884 (Pa. Cmwlth. 2004).  According to Claimant, the WCJ found that Claimant sustained a work injury on that date and, in order for Dr. Leatherwood's opinion to be competent, he had to recognize the existence of that injury and then, to support the termination of benefits, opine that Claimant was fully recovered therefrom.  *GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087, 1092 (Pa. Cmwlth. 2001).  That did not occur here and, therefore, Claimant argues, the WCJ's finding that he was fully recovered is not supported by competent evidence.

In a claim petition proceeding, the claimant bears the burden of proving "the right to compensation and all of the elements necessary to support an award, including" "the duration of disability throughout the pendency of the claim petition." *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 754-55 (Pa. Cmwlth. 2002).  If, during that proceeding, the WCJ concludes that the evidence supports granting the claim petition only for a closed period of disability, the WCJ may terminate the benefits, even if the employer has not requested termination. *Connor v. Workmen's Comp. Appeal Bd. (Super Sucker, Inc.)*, 624 A.2d 757, 758

---

[3] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

(Pa. Cmwlth. 1993). A termination of benefits is proper "where the employer proves that the claimant is fully recovered from the work injury and has no remaining disability that relates to the work injury." *Hall*, 3 A.3d at 740. Full recovery must be proven by unequivocal and competent medical evidence, and "a medical expert's opinion will not support a termination if that medical expert does not acknowledge the accepted work injuries and does not opine full recovery from those injuries." *Id.* "Whether an expert's opinion is competent is a question of law subject to plenary review." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

Initially, we note that all the cases Claimant relies upon involved **previously accepted or judicially-determined injuries** and an employer's subsequent attempt to terminate the claimant's benefits. *See, e.g.*, *Hall*, 3 A.3d at 736 (Notice of Compensation Payable (NCP)); *Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.)*, 865 A.2d 991, 992 (Pa. Cmwlth. 2005) (NCP and injuries expanded via WCJ decision); *U.S. Steel Mining, Co.*, 859 A.2d at 881 (injuries identified in referee decision); *GA & FC Wagman, Inc.*, 785 A.2d at 1088 (NCP). Although Claimant recognizes the different procedural posture of this case, he asserts that the same principle, that the opinion of full recovery by a physician who does not acknowledge the existence of a work injury is not competent, applies and was not satisfied in the present matter. We are unpersuaded by Claimant's arguments.

Here, the WCJ found that Claimant sustained a work-related injury in the nature of a sprain/strain of the right shoulder and neck. (FOF ¶ 11(2).) This finding is based upon WorkNet's diagnosis and Dr. Leatherwood's recognition that the mechanism of injury could result in a "sprain/strain . . . of the shoulder or the muscles which go from the shoulder to the base of the neck . . . ." (R.R. at 214a-15a.) The

7

WCJ further found that Claimant had completely recovered from this injury as of November 10, 2015. (FOF ¶ 12(2).) Thus, while the WCJ rejected Dr. Leatherwood's opinion that no injury had occurred, she accepted his opinion that if an injury had occurred, which he indicated would be a sprain/strain, Claimant had fully recovered as of the November 10, 2015 IME. Conversely, while the WCJ accepted Dr. Pavlou's opinion that Claimant sustained a disabling work injury on July 20, 2015, she rejected Dr. Pavlou's opinion regarding the nature of that work injury and that Claimant remained disabled as a result. The WCJ also rejected Claimant's testimony regarding any ongoing disability as a result of the July 20, 2015 injury.

"The WCJ is the ultimate fact finder and has complete authority for making all credibility determinations." *Rife*, 812 A.2d at 755. It is well-settled that a "WCJ may reject the testimony of any witness **in whole or in part**, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998) (emphasis added). Where the WCJ is required to assess the credibility of deposition testimony, the WCJ must articulate objective bases for crediting one witness's deposition testimony over another witness's deposition testimony. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transport)*, 828 A.2d 1043, 1053-54 (Pa. 2003). Here, the WCJ made particular credibility determinations and provided, where required, objective bases for those determinations that are supported by the record. Thus, there was no error or abuse of discretion in the WCJ, based on her review of the record, "select[ing] from among the proffered testimonies," (Claimant's Br. at 18), to find that Claimant had sustained a disabling work injury in the nature of a sprain/strain of the right shoulder and neck but had fully recovered therefrom.

8

As for the competency of Dr. Leatherwood's opinions, an examination of Dr. Leatherwood's entire testimony reveals that he did recognize the potential existence of a work-related sprain/strain of Claimant's right shoulder and neck, the judicially-accepted injury, and did opine that Claimant had fully recovered therefrom. Dr. Leatherwood testified:

> . . . the first part of my opinion would be whether or not [Claimant] sustained a work-related injury and my opinion at the time of my IME was that I had no objective evidence that an injury had occurred.
>
> In fact, [Claimant's] mechanism as described to me didn't really make a lot of sense for providing an injury - - simply hammering, doing his normal job.
>
> However, at the time, I had no direct evidence concerning the situation and so that was the extent of my opinions that I did not have any objective evidence. In other words, there was no MRI scans showing edema, there was no broken bone, there was no ecchymosis seen, or things like that. So that was the first part of my opinion.
>
> **The second part of my opinion would be that as of the date I saw [Claimant] on November 10th of 2015, there was no evidence of any ongoing injury of any kind. So**, **in my opinion, if an injury had been sustained such as a mild sprain and strain, there was no evidence as of the date I saw him**.
>
> * * *
>
> . . . . **In my opinion as of the date I saw him on November 10th, 2015, [Claimant] could return to his normal duty without restriction**.
>
> * * *
>
> **I don't see any need for any treatment as of November 10th, 2015.**

(R.R. at 209a-11a (emphasis added).) Dr. Leatherwood acknowledged that WorkNet had diagnosed Claimant with a sprain/strain of the right shoulder and cervical spine. (*Id.* at 204a-05a.) He further recognized that, as a result of Claimant's activities on July 20, 2015, "[t]here [was a] potential mechanism . . . for a sprain/strain . . . of the

9

shoulder or the muscles which go from the shoulder to the base of the neck." (*Id.* at 214a-15a.) Dr. Leatherwood concluded his testimony by stating that "[i]f an injury occurred, it was fully recovered as of November 10, 2015." (*Id.* at 232a.)

Although Dr. Leatherwood's primary opinion was that no work-related injury had occurred, he also testified that any injury that may have occurred on July 20, 2015, which included a potential sprain/strain of the right shoulder and "the muscles which go from the shoulder to the base of the neck," had fully resolved, no further treatment was necessary, and Claimant could return to his pre-injury position without restrictions. (*Id.* at 214a-15a.) Claimant appears to argue that, in order for Dr. Leatherwood's testimony to be competent, he had to believe that Claimant had been injured on July 20, 2015. However, "[a] medical expert need not necessarily believe that a particular work injury actually occurred." *Hall*, 3 A.3d at 741. Rather, "[t]he expert's opinion is competent if he assumes the presence of an injury and finds it to be resolved by the time of the IME." *Id.* Dr. Leatherwood's testimony satisfies this standard, and, therefore, that testimony was competent. The WCJ credited this competent testimony, and it constitutes substantial evidence[4] that supports the WCJ's finding that Claimant was fully recovered from his work-related injury as of November 10, 2015.

Thus, although Claimant established that he sustained a work-related injury on July 20, 2015, and was disabled thereby, the WCJ concluded, based on credited, competent evidence, that Claimant no longer suffered a disability from that injury because he had fully recovered as of November 10, 2015. Acting within her authority, the WCJ granted the Claim Petition for a closed period and terminated benefits based on the evidence presented during the proceedings on the Claim

---

[4] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kriebel*, 29 A.3d at 769.

10

Petition.  *Connor*, 624 A.2d at 758.  Therefore, the Board correctly affirmed the WCJ's Decision.

Accordingly, we affirm the Board's Order.


_____
**RENÉE COHN JUBELIRER,** Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Thomas Hughes, : 
               Petitioner : 
               : 
          v. :   No. 1132 C.D. 2017
               : 
Workers' Compensation Appeal : 
Board (Pep Boys), : 
             Respondent : 

**O R D E R**

    **NOW**, February 26, 2018, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFRIMED**.

 

                             _____

                             **RENÉE COHN JUBELIRER,** Judge