**Phillip MARKS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DANA CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 3, 2006.

Decided May 8, 2006.

Marilyn T. Jamain, Fort Washington, for petitioner.

Cecilia M. Muneses, Media, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Phillip Marks (Claimant) petitions the Court for review of an order of the Workers' Compensation Appeal Board (Board) affirming an order of Workers' Compensation Judge Donald H. Poorman that denied the review petition by Claimant and granted the termination petition by Dana Corporation (Employer). The questions include one of first impression: whether Employer has the same burden of disproving the causation of conditions that are similar to and involve the same body parts as those conditions accepted as compensable under an agreement for compensation as Employer has when the injuries are accepted under a notice of compensation payable (NCP). The questions further include whether Employer proved that Claimant's continuing back problems were not related to his accepted lumbar strain and sprain injury and whether Claimant proved that his work injury included a lumbar disc injury when unrefuted evidence demonstrated that Claimant continued to suffer lumbar back complaints with positive radiographic findings requiring restrictions and preventing a return to his time-of-injury job.

Claimant worked for 32 years as a forklift operator and receiver with Employer. His duties included loading and unloading packages using a forklift or by hand and delivering items, which required a lot of walking and standing. On May 30, 2001, Claimant was injured when he reached up to place a new fuel tank onto the forklift. He felt pain down his right side lumbar spine and through his right leg. Claimant immediately reported to the nurse, who referred Claimant for medical treatment and evaluation. As a result, he underwent an MRI and was prescribed physical therapy. For approximately six weeks he worked light duty and was then placed out of work due to Employer's policy that allowed for only six weeks of light-duty work. Employer and Claimant entered into an agreement for compensation on August 7, 2001, which described Claimant's injury as a lumbosacral strain and sprain. Employer agreed to pay Claimant $644 per week based on an average weekly wage of $1029.65, effective August 6, 2001.

In July 2002 Employer filed a termination petition alleging that Claimant had fully recovered from his work injury as of April 10, 2002. Claimant did not file an answer and did not appear at a hearing on August 15, 2002, and WCJ Seymour Nathanson granted Employer's termination petition, concluding that Claimant's failure to deny the averments was an admission of

the facts pleaded. The Board vacated the WCJ's decision and remanded the matter for findings as to the apparent lack of proof of service of the pleadings on Claimant and lack of proof of notice of the termination petition. WCJ Poorman concluded that Claimant had sufficient excuse for failing to attend the hearing. In the meantime, Claimant had filed a review petition requesting that his injury be expanded to include herniated discs at L5–S1 and L3–L4 and grade 1 spondylolisthesis at L3–L4 and L4–L5. The termination petition and review petition were consolidated for disposition.

At the remand hearing, Claimant's review petition was amended to a claim petition. Claimant testified that he had never before felt the pain that he suffered at the time of his injury, that he continues to experience back pain and numbness in both of his feet and that he is not physically capable of returning to his pre-injury job. Dr. Craig H. Johnson, a board-certified neurological surgeon, began treating Claimant on September 10, 2001, and he testified by deposition.

The WCJ summarized Dr. Johnson's testimony as follows:

As a result of multiple examinations and review of diagnostic studies and Claimant's progress and treatment, Dr. Johnson concluded that Claimant suffered a moderately severe stenosis of L4–5 with an unstable grade 1 degenerative anterior listhesis at L4–5 that was aggravated by the work injury. Claimant suffered a left lower herniated disc at L4–5 and a focal small right and central disc herniation L–S1 with inferior extrusion on top of a broad based right and central bulge at L–S1. Claimant is suffering right greater than left S1 radiculopathies documented by clinical examination and EMG and nerve conduction studies. Claimant has multilevel lumbar disc and joint disease, most severe at L4–5 and L–S1.

Dr. Johnson opined that Claimant is not fully recovered from his work injury of May 30, 2001. Dr. Johnson discussed several surgical options which are available for Claimant but agreed that Claimant first undergo conservative treatment. Dr. Johnson disagreed with Dr. [Richard] Mandel's assessment that Claimant had only suffered lumbar strain and sprain as a result of his work injury. Dr. Johnson agreed that Claimant suffers with diabetes with a mild diabetic peripheral neuropathy which is not related to the work injury.

WCJ Poorman's Findings of Fact No. 5e, f. Dr. Johnson opined that Claimant had not fully recovered from his work injury, disagreed that Claimant had only suffered a lumbar strain and sprain from the work injury, agreed that he suffered from mild diabetic peripheral neuropathy unrelated to the work injury and agreed that he had fully recovered from the diagnosis of lumbar strain and sprain.

Employer presented the deposition testimony of Dr. Richard Mandel, a board-certified orthopedic surgeon, who examined Claimant for one-half hour on April 10, 2002 and reviewed medical records from after the date of his injury. Dr. Mandel concluded that Claimant suffered degenerative disc disease, moderate to severe central spinal stenosis at L4–5 and severe bilateral stenosis at L5–S1. He explained that spinal stenosis is a degenerative condition that develops over many years, and he thought that Claimant's radiculopathy was not caused by disc herniation because it was right-sided and the radiculopathy was bilateral. He further thought that Claimant's mild polyneuropathy was "almost certainly" related to his diabetic neuropathy, but he opined that Claimant had recovered fully from the ac-

cepted work injury. He placed light-duty restrictions on Claimant's return to work due to non-work-related spinal stenosis and spondylolisthesis.

The WCJ found the opinion of Dr. Mandel concerning the cause of Claimant's current condition and disability to be more persuasive than the opinion of Dr. Johnson. Dr. Johnson's opinion was considered less persuasive because he agreed that Claimant suffered from diabetic and degenerative disc conditions but did not sufficiently explain the reasons for attributing his current symptoms to his work injury rather than to pre-existing conditions. The WCJ rejected the testimony of Dr. Johnson or of Claimant to the extent that it conflicted with the findings.

The WCJ concluded that Claimant failed to prove that his work injury included additional injuries other than lumbar sprain and strain and that Employer met its burden to prove that Claimant had recovered fully from his work injury as of April 10, 2002. The WCJ denied Claimant's review petition and granted Employer's termination petition, and the Board affirmed. It concluded that the WCJ's findings were supported by substantial, competent evidence; that Claimant had the burden of proving that his additional conditions were work related; that Dr. Mandel's testimony was unequivocal; and that the WCJ did not err by placing the burden on Claimant to prove that his disc herniation was work related inasmuch as he had executed the agreement for compensation, "a more formal document than an NCP." Board Decision at p. 10.[1]

Claimant initially argues that the burden should have been placed on Employer to prove a lack of objective medical findings to substantiate Claimant's complaints and to prove that his continued disability was not causally related to the work injury, which Employer could not prove based upon its medical testimony. Claimant contends that the Board's rationale for placing the burden of proof upon Claimant regarding the relationship between his continuing lumbar symptoms and his work injury was improper. Without case law or statutory authority, the Board presumed that the burden was upon Claimant based on the distinctions that the Board perceived between work injuries that are accepted under a signed agreement for compensation as compared to work injuries that are accepted under an NCP. The agreement was prepared by Employer and signed by Claimant prior to the commencement of his treatment with Dr. Johnson and prior to the diagnostic tests in September and October 2001, showing the disc herniations and radiculopathy.

Claimant relies, among other cases, upon *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 705 A.2d 1290 (1997); *Jordan v. Workmen's Compensation Appeal Board (Consol.Elec.Distribs.)*, 550 Pa. 232, 704 A.2d 1063 (1997); *Gumro v. Workmen's Compensation Appeal Board*, 533 Pa. 461, 626 A.2d 94 (1993), and *Parker v. Workers' Compensation Appeal Board (Dock Terrace Nursing Home)*, 729 A.2d 102 (Pa. Cmwlth.1999). He asserts that the burden has been imposed consistently upon the employer to prove that all of a claimant's work injuries have ceased in order to ob-

---

1. The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record. *Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hora Co., Inc.)*, 872 A.2d 196 (Pa.Cmwlth.2005). The Court may not reweigh the evidence or review witness credibility. *Id.*

tain a termination of benefits and that this burden has been applied in situations where a claimant's continuing or worsening symptoms involve the same body part as does the accepted work injury. Therefore, Employer had to prove that Claimant was fully recovered, and the Board erred in placing the burden upon Claimant.

Employer agrees with the Board that the agreement for compensation is a more formal document and that the burden was correctly placed upon Claimant to prove that his alleged herniated discs along with the grade 1 spondylolisthesis were related to the work injury.[2] In essence, Claimant's execution of the agreement created a rebuttable presumption that the injury described is correct, and even if the burden were upon Employer to disprove causation of Claimant's current condition it in fact met that burden. In any event, it proved Claimant's full recovery based on Dr. Mandel's testimony, and Claimant failed to prove that his work injury included the herniated discs, radiculopathy or aggravation of his spinal stenosis.

■■■ In a termination proceeding, an employer must prove that all disability related to a claimant's work-related injury has ceased. In *Udvari* the Supreme Court articulated the following principle:

> In a case where the claimant complains of continued pain, [the employer's] burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no

objective medical findings which either substantiate the claims of pain or connect them to the work injury.

*Id.,* 550 Pa. at 327, 705 A.2d at 1293. The burden is a considerable one, and it never shifts to the claimant because disability is presumed to continue until proved otherwise. *Dana Corp. v. Workers' Compensation Appeal Board (Hollywood),* 706 A.2d 396 (Pa.Cmwlth.1998). A medical expert's testimony shall be reviewed as a whole and "it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College),* 794 A.2d 443, 449 (Pa.Cmwlth. 2002).

When Dr. Mandel examined Claimant in April 2002, he complained of intermittent low back soreness, numbness in both feet and soreness in his calves and right hip. The symptoms worsened with walking, overhead reaching and other activity. Dr. Mandel concluded that Claimant could not perform his time-of-injury job but that he had recovered fully from the work injury. Noting the doctor's inability to explain how the radiculopathy was unrelated to the work accident and failure to explain a cause for the herniated discs, Claimant asserts that Dr. Mandel's testimony was equivocal and insufficient to support a finding of full recovery:

> Q: Doctor, can you testify here today that these diagnostic studies would look exactly the same had the incident on May 30, 2001 never happened?
> A: I can't tell you that for certain. When we look at the MRI or the myelogram and we see a small protrusion or a

**2.** In *Jeanes Hosp. v. Workers' Compensation Appeal Board (Hass),* 582 Pa. 405, 872 A.2d 159 (2005), the employer filed a petition to suspend or terminate benefits and the claimant filed a review petition. The Supreme Court held that "the WCJ ... must treat a modification petition alleging ... additional injuries as if it were a claim petition." *Id.* at 419, 872 A.2d at 167. It also stated that "[b]ecause it functions 'in the same manner and with the same effect,' the burdens of proof for the respective parties are the same as if an actual claim petition had been filed." *Id.*

small herniation, that very rarely tells us when it happened. But we, so what we have to do is look at that protrusion or that herniation, look at the location, see what it's doing.

And then compare that to the clinical picture, the patient's symptoms, the presentation, and then the physical findings. So we have to try to put all that together and synthesize it. And that's what I did in this case. And in doing so, I was not impressed that the injury caused a disc herniation.

However, even if the judge were to decide that the herniation had been caused by the incident, I would still make the point that the symptoms are not those of a disc herniation. The systems are those of stenosis with some element of peripheral neuropathy.

Deposition of Dr. Mandel, pp. 30–31. In addition to his relying upon insufficient medical testimony, Claimant notes the WCJ's error in finding that the numbness in Claimant's legs was similar to the prior symptoms in his hands when in fact he testified that the prior symptoms were not similar because they were not painful.

Claimant additionally argues that he proved a relationship between his continuing symptoms and the work injury. There is no dispute that he performed heavy-duty work at the time of injury; that he suffers from lumbar stenosis and herniated discs, bilateral radiculopathy and spine degeneration; and that both doctors opined that he is unable to perform his time-of-injury job. Claimant maintains that Dr. Johnson's testimony was unequivocal and was based on accepted facts of record. Dr. Johnson opined that Claimant's herniations were directly related to the work accident, that the lumbar stenosis and degenerative discs were aggravated by the work accident and that the radiculopathy

was related to the degenerative discs and herniations.

There is absolutely no doubt in workers' compensation jurisprudence that the WCJ has the sole power to evaluate the evidence and to determine witness credibility and that the WCJ may accept or reject the testimony of any witness in whole or in part, including a medical witness. *See Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992); *Miller v. Workers' Compensation Appeal Board (Airborne Freight)*, 817 A.2d 1200 (Pa. Cmwlth.2003). It is equally true that a WCJ's credibility finding may not be disturbed if it is supported by substantial evidence in the record. *Bethenergy Mines.* Substantial evidence has been defined as such evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*

In the present matter, it is apparent from the WCJ's decision that he made credibility findings regarding the two medical witnesses. However, he made no credibility findings regarding Claimant's testimony related, for example, to his lack of similar complaints that he experienced in his legs and feet after the work accident as compared to those that he experienced in his hands prior to the work accident; his lack of similar complaints in his low back and lower extremities that he experienced after the accident as compared to the minor back problems that he experienced before the accident; his lack of medical treatment for back problems prior to the work injury; his ability to perform heavy-duty work prior to the accident; or as to whether his symptoms of numbness and tingling in his hands ever prevented him from performing his heavy-duty work prior to the accident.

 While a lack of crucial credibility findings may alone support a basis for

remand, the Court finds that a remand is required here not only because of the lack of necessary credibility findings related to Claimant's testimony but, more fundamentally, also because the Board erred in placing the burden upon Claimant in the termination action. The law is well settled that in termination proceedings the employer must establish within a reasonable degree of medical certainty not only that a claimant is fully recovered from his or her work injury but further that no objective medical findings substantiate the claimant's continued complaints of pain or connect them to the work injury. *Udvari.* That burden never shifts.

It is evident that the burden was placed upon Claimant to establish the causal relationship between his continuing complaints and the work injury. Without any support whatsoever in case law or statutory provision, the Board interposed a new burden based upon distinctions that it perceived between the situation where an employer accepts a work injury as it is described in an agreement for compensation and signed by the claimant as opposed to the situation where the injury is accepted as described in an NCP. Citing Section 407 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 731, for its conclusion that an agreement for compensation is a more formal document than an NCP and therefore is "not simply unilaterally issued," *see* Decision at 10, the Board ruled that the WCJ did not err in placing the burden of proof on Claimant to demonstrate that his herniations were related to the work injury. The Board rejected the applicability of those cases holding that the burden is on an employer to disprove causation of conditions similar to those recognized in an NCP. *See, e.g., Gumro.* Because of the errors committed, the Court vacates the Board's order and remands this matter for the necessary credibility findings, for a review of the evidence based upon a proper assignment of the burden of proof and for the entry of a new decision.

Judge LEADBETTER dissents.

### *ORDER*

AND NOW, this 8th day of May, 2006, the Court vacates the order of the Workers' Compensation Appeal Board, and it remands this case for the purposes indicated in the foregoing opinion.

Jurisdiction is relinquished.