IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter S. Platko,              :
                                :
               Petitioner   :
                                :
        v.               :  No. 661 C.D. 2020
                                :  Submitted:  October 30, 2020
Workers' Compensation Appeal   :
Board (Laser Heating and       :
Cooling),                  :
                                :
              Respondent :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  August 23, 2021

        Peter Platko (Claimant) petitions for review of the June 24, 2020 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting Laser Heating and Cooling's (Employer) termination petition pursuant to Section 413 of the Pennsylvania Workers' Compensation Act (Act).[1]  Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.  Section 413 states, in relevant part, that "[a WCJ] . . . may, at any time, . . . terminate a notice of compensation payable . . . upon petition filed by either party . . . upon proof that the disability of an injured employe has . . . finally ceased . . . ."

On October 20, 2005, Claimant sustained a low back sprain injury during the course and scope of his employment as a heating and cooling technician with Employer. Reproduced Record (R.R.) at 131a.[2] Through a November 16, 2005 Form LIBC-495 Notice of Compensation Payable (NCP), Employer accepted Claimant's work-related injury as a "low back sprain," which Claimant sustained when he "felt pain after lifting." *Id.* Employer acknowledged that "[Claimant] was injured [on] 10/20/05 and became disabled [on] 10/24/05 and [the] disability continues." *Id.* at 132a.

On June 7, 2018, Employer issued a Form LIBC-757 Notice of Ability to Return to Work, alleging that Claimant has "BEEN RELEASED TO RETURN TO WORK FULL DUTIES, NO RESTRICTIONS BY DR. GENE SALKIND, M.D." R.R. at 180a. On July 3, 2018, Employer filed a Form LIBC-378 Petition to Terminate Compensation Benefits, alleging that Claimant had fully recovered from his work-related low back sprain as of May 31, 2018, and can return to work without restrictions. *Id.* at 6a. On July 24, 2018, the WCJ issued an interlocutory order granting Employer's request for supersedeas. *Id.* at 15a.

The WCJ held several hearings, at which Claimant testified on his own behalf and submitted the deposition testimony of Dr. Daniel Skubick, a board-certified neurologist. Employer presented the deposition testimony of Dr. Salkind, a board-certified neurosurgeon.

---

[2] Pa. R.A.P. 2173 states: "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Although the pagination of Claimant's Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule.

Based upon the credibility determinations made by the WCJ,[3] the relevant testimony of the witnesses may be summarized as follows. Claimant testified that he worked for Employer installing heating units and air conditioners in commercial and residential properties. R.R. at 59a. He stated that he had prior back issues in early 2004, and returned to work while still in treatment. *Id.* at 59a-60a. Claimant testified that he had spinal fusion surgery on August 21, 2006, and was unable to return to work. *Id.* at 60a. Claimant stated that his back hurts pretty much all of the time, with pain levels ranging from tolerable to unable to move. *Id.* at 61a. Claimant testified that he cannot return to work at his pre-injury job. *Id.* at 71a.

Dr. Skubick testified that Claimant began treatment at his practice in March 2008. R.R. at 100a. Dr. Skubick testified that in July 2016, he diagnosed Claimant with significant degenerative disc disease status post fusion from L4 to S1, widespread pain syndrome, qualifying for a diagnosis of fibromyalgia, and bilateral lumbar gluteal myofascial pain syndrome secondary to fibromyalgia. *Id.* at 114a. Dr. Skubick testified that he and Dr. Rosen manage Claimant's chronic pain with medications and a morphine pump. *Id.* at 100a. Dr. Skubick admitted that a 2004 magnetic resonance imaging scan (MRI) revealed disc protrusion at L4-L5 prior to Claimant's work injury. *Id.* at 117a; 121a-22a. Dr. Skubick admitted that

---

[3] It is well settled that, in a workers' compensation proceeding, the WCJ is the ultimate finder of fact. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.)*, 479 A.2d 631, 635 (Pa. Cmwlth. 1984). As the fact finder, the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Company v. Workmen's Compensation Appeal Board (Valsamaki)*, 593 A.2d 921, 924 (Pa. Cmwlth. 1991). Questions of credibility and the resolution of conflicting testimony are within the exclusive province of the fact finder, and not this Court. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board (Jakel)*, 377 A.2d 1007, 1010 (Pa. Cmwlth. 1977). As such, the WCJ's findings are binding on appeal if they are supported by substantial evidence. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation)*, 652 A.2d 802, 805 (Pa. 1995).

Claimant's MRIs are neurologically normal. *Id*. at 122a. Dr. Skubick testified that it was his opinion that all of Claimant's diagnoses and the spinal fusion surgery were causally related to Claimant's work injury. *Id.* at 121a.

Dr. Salkind testified that he conducted an IME of Claimant on May 31, 2018. R.R. at 142a. Dr. Salkind also took a history and reviewed Claimant's medical records. *Id.* Dr. Salkind testified that his physical examination of Claimant revealed dramatic signs of symptom magnification and embellishment with no objective findings to support Claimant's subjective complaints of pain. *Id.* at 147a-50a. Dr. Salkind testified that his review of Claimant's diagnostic tests revealed only mild diffuse degenerative disc disease. *Id.* at 151a. Dr. Salkind testified that Claimant's spinal fusion surgery was not a good treatment option for low back pain, and he is not surprised at Claimant's less than stellar post-operative outcome. *Id.* at 155a-56a. Dr. Salkind opined that Claimant was fully recovered from the accepted work-related injury, and that any remaining complaints are unrelated to that injury. *Id.* at 157a; 187a. Dr. Salkind testified that he reached this conclusion based on his examination of Claimant, and Claimant's medical records and diagnostic tests. *Id.* at 156a-57a.

On May 6, 2019, the WCJ granted Employer's termination petition. R.R. at 17a-22a. In doing so, the WCJ found the opinions of Dr. Salkind to be more credible than the opinions of Dr. Skubick, noting Dr. Salkind's superior credentials, and Dr. Skubick's lack of explanation for how Claimant's diagnoses relate to his work injury. *Id.* at 21a. Claimant appealed the WCJ's decision to the Board. On June 24, 2020, the Board affirmed the WCJ's decision. Claimant now petitions this Court for review.

4

On appeal,[4] Claimant initially argues that Dr. Salkind's testimony was equivocal and, therefore, insufficient to support the WCJ's findings of full recovery from the accepted work-related "low back sprain" injury and his ability to return to work without restrictions. In the alternative, Claimant asserts that if the WCJ found Dr. Salkind's testimony regarding Claimant's 2006 spinal fusion surgery competent, then Claimant's ongoing disability is a work-related injury.

Initially, we note that, in a termination petition proceeding, it is the employer's burden to prove that a claimant's disability has resolved, or that any current disability is unrelated to the work injury. *Parker v. Workers' Compensation Appeal Board (Dock Terrace Nursing Home)*, 729 A.2d 102, 104 (Pa. Cmwlth. 1999). When a claimant complains of continued pain, an employer meets its burden by presenting unequivocal medical testimony that the claimant is fully recovered, can return to work without restrictions, and has no objective medical findings that either substantiate the claims of pain or relate them to the work injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997); *accord Marks v. Workers' Compensation Appeal Board (Dana Corp.)*, 898 A.2d 689, 693 (Pa. Cmwlth. 2006). The employer's burden does not shift to the claimant because the claimant's disability is presumed to continue until proven otherwise. *Marks*, 898 A.2d at 693.

Claimant first argues that Dr. Salkind's testimony was equivocal and, therefore, cannot support the WCJ's findings. We disagree. A review of Dr. Salkind's testimony in its entirety reveals an unequivocal opinion that Claimant has

---

[4] Our scope of review is limited to determining whether the constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

fully recovered from his accepted work injury, can return to work without restrictions, and has no objective medical findings to substantiate the complaints of pain or relate them to the work-related injury in the NCP, which the WCJ credited.[5] Specifically, regarding Claimant's full recovery and ability to return to work without restrictions, Dr. Salkind testified, in pertinent part, as follows:

> Q What was your opinion as to whether [Claimant] had fully recovered from the lumbar sprain sustained on October 20, 2005?
>
> A I felt that he had. And I filled out an Affidavit of Recovery.
>
> Q What was your opinion with respect to whether he had further need for further care or treatment?
>
> A I did not feel that he needed any further treatment with respect to the work injury.
>
> * * *
>
> Q Doctor, were all of the opinions rendered in your June 2nd, 2018 report you testified to today made within a reasonable degree of medical certainty?
>
> A They have been.

R.R. at 157a;160a.

---

[5] Whether a medical opinion is equivocal is a question of law reviewable on appeal. *O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011). When making this determination, a court should examine the entirety of a witness's testimony rather than fragments removed from context. *Somerset Welding and Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994). A medical expert's testimony is unequivocal if, after providing a foundation, the medical expert testifies that in his professional opinion, he believes or thinks certain facts exist. *O'Neill*, 29 A.3d at 57. However, the law does not require every word of a medical expert's testimony to be certain, positive, and without reservation or exception. *Id.*

Likewise, the Form LIBC-757 Notice of Ability to Return to Work states that Claimant has "BEEN RELEASED TO RETURN TO WORK FULL DUTIES, NO RESTRICTIONS BY DR. [SALKIND]." R.R. at 180a. Dr. Salkind's June 2, 2018 report that was attached to the form states, in relevant part:

> It is my impression, that as a result of the work-related incident dated October 20, 2005, that [Claimant] did in fact sustain a low back sprain. I believe that [Claimant] has fully recovered from that incident, and to that end I have filled out a physician's affidavit of recovery. [Claimant] has mild, progressive lumbar degenerative disc disease, which I believe is accounting for his persistent complaints. Again, due to the dramatic signs of symptom magnification and embellishment, it is virtually impossible to ascertain the veracity of [Claimant's] complaints. I do not believe that [Claimant] requires any further medical treatment with respect to his work-related condition. Furthermore, I do not believe that [Claimant] suffers any disability as a result of his work-related incident.
>
> The above opinions have been stated within a reasonable degree of medical certainty.

R.R. at 187a. *See also id.* at 189a, Form LIBC-497 Physician's Affidavit of Recovery ("This is to certify that the aforementioned employee has fully recovered from the following work injury[,] LUMBAR SPRAIN[,] which occurred on the date shown above, and is able to resume, without limitation, his[] previous occupation of HVAC MECHANIC on 05-31-2018.").

With respect to Claimant's purportedly disabling non-work-related degenerative disc disease, and the related spinal fusion surgery, Dr. Salkind testified, in relevant part, as follows:

> Q    And everyone agrees, as you do, too, that [Claimant] had disc degeneration problems, which predate the 2005 [work-related] injury?

7

A     True.

Q     And the [work-related] injury would aggravate his degenerative discs -- could aggravate his degenerative discs.

A     I mean, hypothetically, trauma can aggravate degenerative disc disease. It was my impression from what I saw that the patient had a lumbar strain and sprain, not an aggravation of his degenerative disc disease.

Q     What was the surgery for?

A     I'll be damned if I know.

\* \* \*

Q     Can an incident take an asymptomatic condition, such as a bulge or even a herniation -- can a work injury then make that condition symptomatic?

A     I think we've been through this before. And I said in certain circumstances, clearly, trauma can aggravate degenerative disc disease, which is what a bulge or protrusion is.

I just did not see it in this particular case. I thought he had a soft tissue injury.

R.R. at 169a-70a; 175a.

Regarding Claimant's complaints of continuing pain, Dr. Salkind testified that it is subjective, and therefore he is unable to state with certainty the level of pain from which Claimant suffers. R.R. at 159a; 173a-74a. Dr. Salkind testified regarding his examination of Claimant and Claimant's subjective complaints of pain, in pertinent part, as follows:

Q     You're saying you don't know if he's in pain because you can't -- that's subjective. You can't know if he's in pain?

8

A    [Sic] Said I don't know if he's in pain, because that's totally subjective. No one individual can determine whether another individual does or does not have pain.

Q    But, would you agree that a physician is treating him -- physician and physicians, Dr. Rosen and Dr. Skubick, are treating him for pain?

A    I agree that they are. But they are in no [better] position than you or me to know how much or how little pain [Claimant] has.

Q    So you think that he's not in pain?

A    I continue to say I don't know whether he's in pain or not. What I can tell you, with a reasonable degree of medical certainty, is that his examination is so feigned and embellished that it makes it extremely difficult for me to assess the veracity of his complaints.

*Id.* at 173a-74a. The testimony recounted above does not render Dr. Salkind's testimony regarding Claimant's full recovery from his accepted work-related "low back sprain" injury equivocal. *O'Neill.*

Finally, in the alternative, Claimant argues that the WCJ's acceptance of Dr. Salkind's testimony acknowledging the purported residual effects of Claimant's spinal fusion surgery requires a denial of Employer's termination petition because Claimant's current disability is work related. We, again, disagree.

As noted above, the accepted work-related injury in the NCP was a "low back sprain," *see* R.R. at 131a, and the NCP was never amended to include Claimant's degenerative disc disease for which the spinal fusion surgery was performed, and there is no credited medical evidence connecting the work-related injury to the degenerative disc disease.[6] Because the cause of Claimant's purported

---

[6] As noted above, in this regard, Dr. Salkind testified: "And I said in certain circumstances, clearly, trauma can aggravate degenerative disc disease, which is what a bulge or protrusion is. I **(Footnote continued on next page…)**

continuing disability is unrelated to the accepted "low back sprain" from which he

has fully recovered, a termination of his disability benefits was appropriate.  As the

Pennsylvania Supreme Court has explained:

> [T]he employer bears the burden of proof in a termination
> proceeding to establish that the work injury has ceased.  In
> a case where the claimant complains of continued pain,

---

just did not see it in this particular case.  I thought he had a soft tissue injury."  R.R. at 175a.
Additionally, Dr. Salkind's June 2, 2018 report, which was attached to the Form LIBC-757 Notice
of Ability to Return to Work, states, in relevant part:

> Richard J. Meagher[, M.D.,] suggested initially lumbar epidural
> steroid injections.  In follow[-]up, Dr. Meagher recommended a
> discogram.  The discogram revealed that there was positive
> extravasation and provocation at L3-4, as well as at L4-5.
> [Claimant] was disinclined to further conservative therapy, and on
> August 21, 2006, underwent a left L4-5 microdiscectomy with an
> L4-5 posterolateral fusion with pedicle screw fixation and allograft.
> It is curious that [Claimant] had very subtle lumbar degenerative
> disc disease at L4-5 without significant nerve root compression.  His
> discogram was allegedly positive at L3-4 and L4-5.  This is []
> aggressive surgery decision[-]making irrespective of the etiology of
> [Claimant's] pain.  I believe that [Claimant's] clinical course is not
> terribly surprising as a result of this.
>
> [Claimant] sought consultation with James Weis, M.D., on August
> 10, 2006.  Dr. Weis is an orthopedic surgeon, who took a history of
> a man . . . with severe axial back pain markedly interfering with his
> functional abilities. [Claimant] had multilevel lumbar degenerative
> disc disease which was most pronounced at L5-S1.  Dr. Weis did
> not recommend surgical intervention.  Clearly, [Claimant] had a left
> L4-5 microdiscectomy, in the face of a positive discogram at L3-4,
> and degenerative disc disease most marked at L5-S1, I would expect
> persistent complaints of pain due to [Claimant's] degenerative disc
> disease.  Furthermore, he had predominantly low back pain, which
> routinely fails to improve after lumbar surgery.  The surgery is
> designed to improve the leg pain, which represented a paucity of
> [Claimant's] complaints.

*Id.* at 155a-56a.

10

> this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

*Udvari*, 705 A.2d at 1293 (footnote omitted). Clearly, Employer sustained its burden of proof in these termination proceedings based on the evidence credited by the WCJ, and, as a result, the Board did not err in affirming the WCJ's decision.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter S. Platko,                         :
                                         :
                   Petitioner            :
                                         :
          v.                             :  No. 661 C.D. 2020
                                         :
Workers' Compensation Appeal             :
Board (Laser Heating and                 :
Cooling),                                :
                                         :
                   Respondent            :


**O R D E R**


AND NOW, this 23<u>rd</u> day of <u>August</u>, 2021, the June 24, 2020 order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge