IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monifa Holmes,                          :
                                        :
                    Petitioner          :
                                        :
            v.                          : No. 119 C.D. 2022
                                        : Submitted: August 19, 2022
Bayada Home Health Care, Inc.           :
(Workers' Compensation Appeal           :
Board),                                 :
                                        :
                    Respondent          :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: June 29, 2023


        Monifa Holmes (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board) affirming the decision of a workers'
compensation judge (WCJ) that granted the Petition to Terminate Benefits
(Termination Petition) filed by Bayada Home Health Care, Inc. (Employer) pursuant
to the Workers' Compensation Act (Act).[1]  We affirm.

        On April 22, 2015, Claimant injured her left shoulder while in the
course and scope of her employment as a nurse for Employer.  Employer issued a

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Temporary Notice of Compensation Payable (TNCP) accepting Claimant's injury in the nature of a left bicep strain. Claimant's injury was redefined in the WCJ's May 22, 2017 decision as a status post debridement of a superior labrum from anterior to posterior (SLAP) lesion and biceps tendonesis. *See* Reproduced Record (RR) at 329a-30a. On March 28, 2020, Employer filed its Termination Petition alleging, *inter alia*, that Claimant had fully recovered from all work-related injuries as of March 5, 2020.

At the hearings before the WCJ, Claimant testified in opposition to Employer's Termination Petition in a June 4, 2020 deposition and at a remote hearing on October 19, 2020. In relevant part, Claimant stated that she works as a charge nurse at a rehabilitation facility 4 days per week for a total of 32 hours. She is transcribing and administering medications, and doing treatments and labs. She also works for US Medical Staffing per diem, every other weekend. Claimant lives with her parents and takes care of them. She drives her father to his appointments at the Veteran's Administration, and does the shopping, cooking, cleaning, and the laundry.

Claimant stated that she did not see Anne Colton, M.D., for treatment for her shoulder between 2018 and mid-2020. She had a flare up after starting a job that was more physically demanding and saw Dr. Colton for an injection on June 17, 2020. Her pain ranges from a low of two to a high of eight, depending on her activities. Pushing, pulling, and lifting are the activities that cause the most pain. Her pain is located in her left shoulder at the front and the top, and into the back. She manages her pain by icing her shoulder, taking Motrin, and doing home exercises. She tries not to lift more than 20 pounds.

Claimant testified that she could return to her pre-injury job if she had assistance with lifting, or if she had a client who required no lifting. However, she stated that she does not believe that she has made a full recovery because she still has pain in her left shoulder especially when she is lifting.

Claimant presented the July 12, 2018[2] and October 8, 2020 deposition testimony of Dr. Colton in opposition to Employer's Termination Petition. In her

[2] As the WCJ explained:

> Claimant submitted Dr. Colton's deposition from 2018, which this [WCJ] has reviewed for historical perspective. However, since Employer has alleged that Claimant was fully recovered effective March 5, 2020, Dr. Colton's deposition from 2018 is not relevant to the issue in the instant case and this [WCJ] will not make findings of fact based on the old deposition.

RR at 13a.

Likewise, in reviewing the claims raised in the instant appeal, reference to the July 12, 2018 deposition is again useful to gain perspective. Specifically, in that deposition, Claimant introduced Exhibit C-3, which was a July 13, 2016 Functional Capacity Evaluation (FCE) that was completed by a physical therapist at Dr. Colton's recommendation, and that was admitted into the record without objection. *See* RR at 68a. Throughout her July 12, 2018 deposition testimony, Dr. Colton repeatedly relied upon the FCE in formulating her expert opinion with respect to Claimant's residual disability and lack of full recovery, and as the basis upon which work restrictions should be imposed. *See, e.g.*, *id.* at 72a-73a, 74a, 82a, 87a-88a.

Similarly, in the October 8, 2020 deposition, Dr. Colton again relied upon the July 13, 2016 FCE stating, in relevant part:

> Q.    Do you think she ever made a full recovery from her work injuries?
> A.    No.
>
> Q.    And can you explain to the [WCJ] why you believe that?
> A.    So after the surgery, I've done the surgery hundreds of times, I would say most of my patients get back a hundred percent strength and they never come back and see me. I never see them after the

**(Footnote continued on next page…)**

3

four-month period. And [Claimant] has never gotten all the way back there, to the point where we got a[n FCE]. She couldn't go back to her regular job. Every time she would go back to her regular job where she had to lift overhead or lift heavy things, it would aggravate her underlying symptoms. So prior to the surgery, prior to the injury, she was able to do all those things and after the injury she wasn't. So in that respect I don't think that she has ever fully recovered.

* * * *

Q.    Do you agree with Dr. Mandel[] that [Claimant], your patient, has made a full recovery from her work injury?
A.    No.

Q.    And why not?
A.    You know, in an effort not to be repetitive, again the patient was asymptomatic, was able to lift as much as she needed to do for her job prior to the work injury. And after the work injury she was not. And we had that [FCE] that showed that. And with, you know, frequent and infrequent visits to my office, she never was pain free or able to do heavy lifting type of activity. And any time that she tried to do those things, it aggravated her pain.

* * * *

Q.    You discussed a[n FCE] on direct examination. When was that performed?
A.    I think it was 2017. Let me see if I can find it because we switched over our [electronic health record system (EHR)], I have two different EHRs pulled up on my computer. Maybe somebody else has a copy of it.

Q.    That's okay. If it was approximately 2017, has there been a[n FCE] performed since that you're aware of?
A.    Not that I'm aware of, no.

* * * *

Q.    Now, regarding your May and June of this year examination, you never imposed any work restrictions on [C]laimant, correct?

**(Footnote continued on next page…)**

4

October 8, 2020 deposition testimony, Dr. Colton noted that she did not treat Claimant between May 2018 and May 2020, and only treated Claimant twice in 2020. On May 19, 2020, she stated that Claimant complained of left shoulder pain with decreased mobility and tenderness with fluctuating pain severity. She observed that upon physical examination, Claimant had tenderness along the acromioclavicular (AC) joint and along the musculature of the posterior shoulder and admitted that these were subjective complaints of pain. Claimant had full range of motion and full strength in her rotator cuff. She diagnosed Claimant with mild synovitis of the AC joint, pain in the shoulder, and trapezius muscle spasm; however, she could not say with certainty that the diagnoses were related to the April 22, 2015 work injury. Dr. Colton opined that Claimant is not fully recovered from her work injuries based on the July 13, 2016 FCE and due to Claimant's continued aggravation of her underlying symptoms. *See* RR at 255a-56a, 258a-59a.

Employer presented the July 1, 2020 deposition testimony and report of Richard Mandel, M.D., in support of its Termination Petition. Dr. Mandel testified that he performed a March 5, 2020 independent medical examination (IME) of Claimant in which she admitted that she only had pain occasionally and intermittently. Claimant stated that she experienced pain in the superior aspect of the shoulder, and the upper part of the left back, but she had not experienced pain in the biceps in a long time. She noted that she was symptom-free if she was careful

---

A. Correct. I thought we already had those discussions before.

Q. And you never imposed any restrictions on her in May of 2018, correct?
A. I think I just felt that once we had done that, they were permanent restrictions as per the FCE.

RR at 255a-56a, 258a-59a, 266a, 267a.

5

with her activities, and she had no difficulty in driving.  Claimant explained that she was not treating with any doctors at the time of the IME, and she had only treated with her surgeon one year prior to the IME for a check-up.

Upon physical examination, Dr. Mandel observed no swelling or tenderness of Claimant's left shoulder or over the biceps and she had a normal biceps contour.  He stated that there was some subjective tenderness over the left trapezius; but he found no muscle tightness or spasms and noted the significance of this finding in that if a patient has significant muscle pain, she will have muscle tightness or spasm.  His examination of Claimant, including the cervical and both upper extremities, was otherwise normal.

Dr. Mandel opined that Claimant had sustained a left biceps strain and SLAP lesion of the left shoulder as a result of her work injury, consistent with the WCJ's May 22, 2017 decision.  He found that she was fully recovered from her work-related injury at the time of the IME as she was almost completely asymptomatic.  *See* RR at 383a-85a.  He stated that she does not require any further medical treatment and could return to work in her pre-injury position with no restrictions.  *See id.* at 385a-86a.[3]

---

[3] Correspondingly, Dr. Mandel's March 5, 2020 IME report states, in relevant part:

> My impression is that [Claimant] sustained a left biceps strain and SLAP lesion of the left shoulder as a result of the work incident of 04/22/15.  Her treatment, including arthroscopic labral debridement and open biceps tenodesis, was reasonable, medically necessary and occurred secondary to the injury sustained on 04/22/15.  Unrelated to the work incident, she developed cervical radiculopathic symptoms quite some time after the work incident.  The first mention of any possible cervical related symptoms was in Dr. Colton's note of 09/13/16, almost a year and a half after the incident.  [Claimant] attributed the new symptoms to grip testing using a

**(Footnote continued on next page…)**

6

On April 9, 2021, the WCJ issued a decision disposing of Employer's Termination Petition in which she found Claimant's "testimony as to ongoing disability neither credible nor persuasive." RR at 14a. With respect to the medical experts, the WCJ found "that Dr. Mandel is more credible and persuasive than Dr. Colton." *Id.* Specifically, the WCJ explained the bases for her credibility determinations, in relevant part, as follows:

> 11. This [WCJ] has carefully compared the testimony of Dr. Colton and Dr. Mandel. This [WCJ] finds that Dr. Mandel is more credible and persuasive than Dr. Colton. Dr. Colton did not treat Claimant for two years between May of 2018 and May of 2020 and has only treated

> dynamometer during an IME. Such grip testing would not have caused any injury to the neck, and, in fact, an MRI of the cervical spine revealed significant degenerative findings that were not caused or aggravated by the incident in question.

> On today's evaluation and according to her history, she no longer experiences pain in the anterior aspect of the left upper extremity, *i.e.*, there is no biceps muscle or biceps tendon pain. There is also no biceps deformity. In my opinion, she has recovered completely from the biceps tenodesis with an excellent result. There was also no evidence on today's examination of any ongoing symptoms related to the labral tear, which was appropriately addressed surgically. In my opinion, she has recovered from the labral tear.

> Her present symptoms are nonspecific and were not confirmed by any objective findings on exam today. Her complaints may represent simply intermittent muscle soreness in the upper trapezius. Alternatively; the symptoms might be referred from the cervical spine. In any event, in my opinion she has fully recovered from all of the accepted injuries. In this regard, she requires no additional treatment and can return to full, unrestricted duty.

> These opinions are provided to within a reasonable degree of medical certainty

RR at 428a.

7

Claimant twice in the year 2020, following the filing of [Employer's Termination Petition]. Dr. Colton inaccurately relied on an [electromyography (EMG)] to form the basis as to whether Claimant was fully recovered; Dr. Colton admitted the EMG was from 2016 and performed by a physical therapist. She further admitted there was no updated EMG performed since 2016.[4] Dr. Colton admitted during both her 2018 and 2020 depositions that Claimant's only positive findings on examination were subjective. Otherwise, Claimant's examinations were normal from an objective standpoint. Dr. Colton diagnosed Claimant with mild synovitis of the AC joint, pain in the shoulder and trapezius muscle spasm, and impingement syndrome despite this [WCJ] specifically finding Claimant did not sustain a rotator cuff tendonitis, impingement syndrome, and cervical spine injury as a result of the work injury. Dr. Colton testified in 2018 that she imposed an overhead lifting restriction and a 10-pound lifting restriction. She noted the restrictions continued through 2020; however, Claimant was working outside of her alleged continuing restrictions, as she admitted she was lifting up to 20-25 pounds, and helping patients with their activities, including helping the patients shower. Dr. Mandel specifically addressed Claimant's lack of treatment and symptoms leading up to the IME for almost two years prior. Additionally, he specifically addressed Dr. Colton's diagnoses and rendered an opinion disagreeing with the relatedness to the injury based both on her diagnoses being completely new and based on his and Dr. Colton's almost entirely normal examination, aside from subjective complaints. The testimony of Dr. Mandel is accepted as fact while the testimony of Dr. Colton is rejected.

---

[4] As outlined above, in her July 12, 2018 and October 8, 2020 deposition testimony, Dr. Colton extensively relied upon the July 13, 2016 FCE, and not an EMG, in formulating her expert opinion with respect to Claimant's residual disability and lack of full recovery, and as the basis upon which she would impose work restrictions. *See* RR at 72a-73a, 74a, 82a, 87a-88a, 255a-56a, 258a-59a, 266a, 267a. Specifically, as indicated by the WCJ, Dr. Colton acknowledged that she had relied upon the FCE in determining that Claimant was not fully recovered; admitted that the FCE was performed by a physical therapist, and not a doctor; and further admitted that another FCE had not been performed since the initial FCE was performed on July 13, 2016. *See id.* at 72a-73a, 88a, 255a-56a, 258a-59a, 266a.

*Id.*

Based on the foregoing, the WCJ found as fact: (1) consistent with her May 22, 2017 decision, Claimant sustained a work-related injury in the nature of a status post debridement of a SLAP lesion, biceps strain, and biceps tenodesis on April 22, 2015;[5] and (2) Claimant was fully recovered from this work-related injury

---

[5] In the May 22, 2017 decision, with respect to the deposition testimony of Claimant's medical expert, Gerald Dworkin, D.O., the WCJ found, in pertinent part, that "Dr. Dworkin opined that the diagnosis of [Employer's medical expert, Todd Kelman, D.O.,] that Claimant had resolving chronic left shoulder pain status post debridement, labral SLAP lesion and tenotomy with bicep tendinosis of the left shoulder was reasonable." RR at 324a. In that decision, the WCJ also found that, following an initial examination on February 2, 2016, and review of Claimant's medical records and testing results, Dr. Kelman "diagnosed Claimant as having a resolving chronic left shoulder pain status post debridement of a labral SLAP lesion and tenotomy with biceps tenodesis of the left shoulder with some residual left rotator cuff tendonitis" in Dr. Kelman's June 3, 2016 deposition. *Id.* at 325a. The WCJ found that, following a subsequent examination on September 8, 2016, and review of Claimant's medical records and testing results, Dr. Kelman "***continued to diagnose her as status post debridement of a SLAP lesion and biceps tenodesis***" in his January 3, 2017 deposition. *Id.* at 326a (emphasis added). *See also* Dr. Kelman's September 8, 2016 IME report, Claimant's Exhibit S03, RR at 316a ("Chronic left shoulder pain status post debridement labral SLAP lesion and tenotomy of biceps tenodesis, left shoulder," and "[r]esolved left rotator cuff tendinitis."). The WCJ further found "the testimony of Dr. Kelman more credible and persuasive than the testimony of Dr. Dworkin," and that "[t]he testimony of Dr. Kelman is accepted as fact while the testimony of Dr. Dworkin is rejected where it is in conflict." *Id.* at 329a.

Ultimately, the WCJ made the following relevant findings of fact:

> 32. This [WCJ] has reviewed the medical evidence specifically with regard to Claimant's claim for additional conditions as being related to Claimant's work injury. This [WCJ] accepts Dr. Kelman's opinions that Claimant's work injury is status post debridement of a labral SLAP lesion and biceps tenodesis of the left shoulder as per his examination on September 8, 2016. Dr. Dworkin's opinions as to an expanded work injury with injuries to Claimant's neck and additional injuries to her left arm are not accepted as credible or persuasive. . . .

**(Footnote continued on next page…)**

33. This Judge has carefully reviewed Claimant's testimony and she is found not credible. . . .

\* \* \* \*

35. Claimant's work injury consists only of a status post debridement of a SLAP lesion and biceps tenodesis.

\* \* \* \*

38. Claimant has not proven her condition related to her work injury has worsened.

\* \* \* \*

41. Employer shall continue to be liable for Claimant's reasonable and necessary medical treatment related only to her work injury of a status post debridement of a SLAP lesion and biceps tenodesis.

RR at 330a-31a.

Based on the foregoing, the WCJ made the following pertinent conclusions of law:

1. Claimant has sustained her burden of proving that her work injury consist[s] of a status post debridement of a SLAP lesion and biceps tenodesis. Thus, her Petition to Review shall be granted only to the extent of enlarging Claimant's work injury from a left bicep strain to a status post debridement of a SLAP lesion and biceps tenodesis.

2. Claimant has not sustained her burden of proving any other allegations contained in her Petition to Review. Thus, Claimant's Petition for Review is denied and dismissed.

RR at 331a. Accordingly, the WCJ issued an order directing that "Claimant's Petition for Review is granted *only to the extent of expanding Claimant's injury to a status post debridement of a SLAP lesion and biceps tenodesis*," and that "Employer shall continue to be liable for Claimant's reasonable and necessary medical treatment related *only to her work injury of a status post debridement of a SLAP lesion and biceps tenodesis*." *Id.* at 333a (emphasis added).

10

effective March 5, 2020. RR at 14a-15a. As a result, the WCJ concluded that Employer sustained its burden of proving that Claimant was fully recovered from her work-related injury effective March 5, 2020, and issued an order granting Employer's Termination Petition effective March 5, 2020. *See id.* at 15a, 16a. On appeal, the Board affirmed the WCJ's decision, *see id.* at 24a-31a, and Claimant then filed the instant petition for review.

In this appeal,[6] Claimant contends that the Board erred in affirming the WCJ's decision because: (1) the WCJ relied on evidence outside of the record thereby invalidating all of the credibility determinations made at the heart of her decision; and (2) Employer did not meet its burden of proving by competent

---

[6] This Court's scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. *Commonwealth of Pennsylvania v. Workers' Compensation Appeal Board (Piree)*, 182 A.3d 1082, 1086 n.8 (Pa. Cmwlth. 2018). In addition, as we have recently explained:

> [I]n a termination petition proceeding, it is the employer's burden to prove that a claimant's disability has resolved, or that any current disability is unrelated to the work injury. *Parker v. Workers' Compensation Appeal Board (Dock Terrace Nursing Home)*, 729 A.2d 102, 104 (Pa. Cmwlth. 1999). When a claimant complains of continued pain, an employer meets its burden by presenting unequivocal medical testimony that the claimant is fully recovered, can return to work without restrictions, and has no objective medical findings that either substantiate the claims of pain or relate them to the work injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997); *accord Marks v. Workers' Compensation Appeal Board (Dana Corp.)*, 898 A.2d 689, 693 (Pa. Cmwlth. 2006). The employer's burden does not shift to the claimant because the claimant's disability is presumed to continue until proven otherwise. *Marks*, 898 A.2d at 693.

*Platko v. Workers' Compensation Appeal Board (Laser Heating and Cooling)* (Pa. Cmwlth., No. 661 C.D. 2020, filed August 23, 2021), slip op. at 5.

11

evidence that Claimant had fully recovered from all of the accepted work-related injuries.

Claimant first asserts that the Board erred in affirming the WCJ's decision because the WCJ relied on evidence outside of the record thereby invalidating all of the credibility determinations[7] made at the heart of her decision. Specifically, Claimant submits that the WCJ's reference to an EMG from 2016 with respect to Dr. Colton's testimony in her April 9, 2021 decision granting Employer's Termination Petition demonstrates that she relied on evidence outside of the record because no EMG was ever admitted into evidence or referenced by any of the expert medical witnesses presented at the hearings.

As noted above, in rejecting Dr. Colton's testimony as not credible, the WCJ explained, in Finding No. 11, that "Dr. Colton inaccurately relied on an EMG to form the basis as to whether Claimant was fully recovered"; "Dr. Colton admitted

---

[7] As we have observed:

> It is well settled that, in a workers' compensation proceeding, the WCJ is the ultimate finder of fact. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.)*, 479 A.2d 631, 635 (Pa. Cmwlth. 1984). As the fact finder, the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Company v. Workmen's Compensation Appeal Board (Valsamaki)*, 593 A.2d 921, 924 (Pa. Cmwlth. 1991). Questions of credibility and the resolution of conflicting testimony are within the exclusive province of the fact finder, and not this Court. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board (Jakel)*, 377 A.2d 1007, 1010 (Pa. Cmwlth. 1977). As such, the WCJ's findings are binding on appeal if they are supported by substantial evidence. *Moore v. Workmen's Compensation Appeal Board (Reading Paperboard Corporation)*, 652 A.2d 802, 805 (Pa. 1995).

*Platko*, slip op. at 3 n.3.

the EMG was from 2016 and performed by a physical therapist"; and "she further admitted there was no updated EMG performed since 2016." RR at 14a. However, as extensively outlined above, in her July 12, 2018 and October 8, 2020 deposition testimony, Dr. Colton cited the July 13, 2016 *FCE*, and not an EMG, in formulating her expert opinion, and acknowledged that she had relied upon the FCE in determining that Claimant was not fully recovered; admitted that the FCE was performed by a physical therapist, and not a doctor; and further admitted that another FCE had not been performed since the initial FCE was performed. *See id.* at 72a-73a, 88a, 255a-56a, 258a-59a, 266a. Thus, based on our review of the certified record in this matter in general, and the WCJ's April 9, 2021 decision and Dr. Colton's deposition testimony in particular, it is clear that the WCJ's use of the term "EMG" in place of the term "FCE" is merely a typographical error.

In this regard, this Court has previously observed:

> An examination of the WCJ's decision and order as a whole, however, reflects that her use of the 1996 date in Finding No. 7 is merely a typographical error. Later, in the order the WCJ used the correct date of January 6, 1995 to set the effective date for the suspension of [the claimant's] benefits. Because the error was merely typographical and the WCJ was aware of the correct date, the error was harmless.

*Trimmer v. Workers' Compensation Appeal Board (Monaghan Township)*, 728 A.2d 438, 441 (Pa. Cmwlth. 1999). Likewise, in the instant matter, because the WCJ's error in Finding No. 11 was merely typographical, and because she was clearly aware of the correct procedure upon which Dr. Colton relied, the WCJ's error in this regard was harmless.

Moreover, as the Board stated in its Opinion affirming the WCJ's decision:

Whether Dr. Colton's October 8, 2020 deposition testimony references an EMG does not inform the relevant inquiry as to whether the finding of full recovery was based on substantial, competent evidence. Furthermore, the WCJ cited in detail various other reasons as to why she credited the testimony of Dr. Mandel over that of Dr. Colton separate from any EMG, which are supported by the record. (Finding [No.] 11[, RR at 14a]). Because the finding of full recovery is based on substantial, competent evidence in the form of Dr. Mandel's credited testimony, we will not disturb the finding of full recovery based on this argument.

RR at 29a-30a.

As indicated above, the WCJ also found Dr. Colton's testimony not credible because: (1) "Dr. Colton admitted during both her 2018 and 2020 depositions that Claimant's only positive findings on examination were subjective," and "[o]therwise, Claimant's examinations were normal from an objective standpoint"; (2) "Dr. Colton diagnosed Claimant with mild synovitis of the AC joint, pain in the shoulder and trapezius muscle spasm, and impingement syndrome despite this [WCJ] specifically finding Claimant did not sustain a rotator cuff tendonitis, impingement syndrome, and cervical spine injury as a result of the work injury"; and (3) "Dr. Colton testified in 2018 that she imposed an overhead lifting restriction and a 10-pound lifting restriction," and "[s]he noted the restrictions continued through 2020," but that "Claimant was working outside of her alleged continuing restrictions, as she admitted she was lifting up to 20 [to] 25 pounds, and helping patients with their activities, including helping the patients shower." RR at 14a.

Claimant does not contend that any of the foregoing factual determinations are not supported by substantial evidence in the certified record of this case. As a result, these findings are binding upon this Court on appeal. *See Moore*, 652 A.2d at 805. In short, contrary to Claimant's assertions, the WCJ's

14

harmless reference to an EMG, rather than an FCE, in her decision is not a basis upon which all of the WCJ's credibility determinations with respect to the expert medical evidence will be overturned in this appeal.

Finally, Claimant submits that the Board erred in affirming the WCJ's decision because Employer did not meet its burden of proving by competent evidence that Claimant had fully recovered from all of the accepted work-related injuries. Specifically, Claimant argues that the WCJ accepted Dr. Kelman's testimony as credible in her May 22, 2017 decision, and Dr. Kelman testified in his June 3, 2016 deposition that he diagnosed Claimant as suffering from "resolving chronic left shoulder pain status post debridement of a labral SLAP lesion and tenotomy with biceps tenodesis of the left shoulder with some residual left shoulder rotator cuff tendonitis" upon his initial February 2, 2016 examination of Claimant. *See* RR at 325a. Claimant contends that Employer did not sustain its burden of proving that she had recovered from the residual left rotator cuff tendonitis aspect of Dr. Kelman's diagnosis, and that the WCJ erred in failing to find that Claimant did not sustain a left rotator cuff tendonitis injury in the April 9, 2021 decision.

However, as outlined above, in her May 22, 2017 decision, the WCJ found that, following a subsequent examination on September 8, 2016, and review of Claimant's medical records and testing results, Dr. Kelman "***continued to diagnose her as status post debridement of a SLAP lesion and biceps tenodesis***" in his January 3, 2017 deposition. RR at 326a (emphasis added). *See also* Dr. Kelman's September 8, 2016 IME report, Claimant's Exhibit S03, RR at 316a ("Chronic left shoulder pain status post debridement labral SLAP lesion and tenotomy of biceps tenodesis, left shoulder," and "[r]esolved left rotator cuff tendinitis."). Thus, the WCJ was free to accept as credible Dr. Kelman's January 3,

15

2017 deposition testimony, and September 8, 2016 IME report, that Claimant only sustained a work-related injury in the nature of "a status post debridement of a SLAP lesion and biceps tenodesis," and that any resolved left rotator tendinitis was not attributable to her work-related injury. *See, e.g.*, *General Electric Company*, 593 A.2d at 924 ("In the exercise of broad discretion, the [WCJ] may also accept or reject the testimony of any witness, including a medical witness, in whole or in part.") (citation omitted).

In sum, the limited description of Claimant's work-related injury as found in the WCJ's May 22, 2017 decision and her April 9, 2021 decision, not relating any resolved left rotator tendinitis to her work-related injury, is amply supported by Dr. Kelman's January 3, 2017 deposition testimony and his September 8, 2016 IME report, admitted as Claimant's Exhibit S03. *See* RR at 316a, 326a. In addition, Dr. Mandel's opinion that Claimant had sustained a left biceps strain and SLAP lesion of the left shoulder as a result of her work injury, consistent with the WCJ's May 22, 2017 decision, and that she has fully recovered from all of these work-related injuries at the time of the IME, is likewise supported by substantial, competent evidence.[8] As a result, Claimant's assertion that Employer did not sustain

---

[8] In relevant part, Dr. Mandel testified as follows:

> Q.   [B]ased on the history you received; your review of medical records, and the results of your physical examination, what is the diagnosis you attribute to the work injury of April 22nd, 2015?
>
> A.   My opinion is that [Claimant] sustained a left biceps strain and SLAP lesion of the left shoulder as a result of the work incident from April 2015.
>
> Q.   And what is your opinion as to whether she was fully recovered as of your March 5th, 2020 IME?

**(Footnote continued on next page…)**

A.      It was my opinion that she was fully recovered from all of those injuries.

Q.      And can you explain to the [WCJ] why that -- you rendered that opinion?
A.      Yes. Well, there was absolutely -- well, first of all, she was almost asymptomatic. She was really completely asymptomatic with regard to any symptoms that could be arising from any residual SLAP lesion, labral tear, or pathology involving the long head of the biceps. Those parts of the examination were a hundred percent normal.

      The only areas of discomfort or pain that she was experiencing, this was just intermittently, but the pain that she experienced intermittently was in the area of the superior aspect of the shoulder, meaning the trapezius area, and she said also around the left shoulder blade.

      These areas are remote from the long head of the biceps and from the labrum. And pain in those areas is --- is not consistent with any ongoing injury to the biceps or to the glenoid labrum.

      So I would say the -- the location of her symptoms and the physical exam findings revealing no ongoing problems whatsoever related to the injured areas led me to my opinion, my conclusion with confidence.

Q.      And what is your opinion as to whether [C]laimant required any further medical treatment related to the April 22nd, 2015 work injury?
A.      It was my opinion that she required no further treatment related to the 2015 work injury.

Q.      And what is your opinion as to whether she can return to her preinjury position in terms of the April 22nd, 2015 injury?
A.      It was my opinion that she could return to her preinjury position without any sort of restriction or limitation.

\* \* \* \*

Q.      Okay. Now, Dr. Mandel, have all of your opinions been rendered within a reasonable degree of medical certainty?
A.      Yes.

RR at 383a-85a, 391a; *see also* Dr. Mandel's March 5, 2020 IME report, RR at 428a, *supra*.

17

its burden of proving that Claimant had recovered from all of her work-related injuries is patently without merit.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monifa Holmes,                          :
                                        :
                    Petitioner          :
                                        :
            v.                          :  No. 119 C.D. 2022
                                        :
Bayada Home Health Care, Inc.           :
(Workers' Compensation Appeal           :
Board),                                 :
                                        :
                    Respondent :

# **O R D E R**

AND NOW, this 29th day of June, 2023, the order of the Workers' Compensation Appeal Board dated January 12, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge